STATE of Tennessee, Appellee,

v.

Mike Boot PARKER, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

March 18, 1996.

Permission to Appeal Denied by Supreme Court Sept. 9, 1996.

Francis D. Gibson, III, Maryville, for appellant.

Charles W. Burson, Attorney General and Reporter, Sharon S. Selby, Assistant Attorney General, Nashville, Randall E. Nichols, District Attorney General, Robert L. Jolley, Jr., Andrew Jackson, VI, Assistant District Attorney Generals, Knoxville, for appellee.

## OPINION

JONES, Judge.

The appellant, Mike Boot Parker, was convicted of facilitation of aggravated robbery, a Class C felony, by a jury of his peers. The trial court found that the appellant was a standard offender and imposed a Range I sentence of confinement for five (5) years in the Department of Correction.

Several issues are presented for review. The appellant contends:

(1) The Court was in error in failing to grant [a] new trial or grant Judgment of Acquittal for the failure of the Appellee to furnish the pre-trial statement of Donna Owens as exculpatory.

(2) The Court was in error in failing to sustain the objection of the Appellant as to evidence presented by the State inconsistent with the Bill of Particulars and the Court was in further error in failing to find fatal variance with the indictment.

(3) The Court was in error in overruling the objection of the Appellant and in error in allowing the State to go into events occurring after the return of Darrell Easterly to the residence of the Appellant.

(4) The Court was in further error in charging the jury to disregard the testimony of the Appellant concerning the events which took place after the return of Darrell Easterly to the residence and was in error in failing to charge on the attorney client privilege.

(5) The verdict of the jury is contrary to the weight of evidence, not in accordance with the instructions of the Court as to the application of evidence, and obviously compromised and further violated the instructions of the Court.

(6) The verdict of the jury was based upon the uncorroborated testimony of an accomplice. The Court was in error in failing to grant judgment of acquittal at the conclusion of all proof.

(7) The Court erred in finding as a matter of law that the indictment language included the status of aider and abettor and, consequently, the lesser offense of facilitation.

(8) The Court was in error in sentencing by failing to find any mitigating factors, enhancing the sentence on enhancement factors announced as no evidence was presented by the State as to these enhancement factors in the presentation of proof or at the sentencing hearing.

(9) The Court was in error failing to consider the Appellant for judicial diversion or alternative sentencing. The sentence pronounced was cruel and unusual for the verdict of the jury and the facts of this case.

(10) The Court was in error in accepting the verdict of the jury as the Court invaded the province of the jury by the ruling on the verdict by necessity.

The judgment of the trial court is affirmed.

Darrell W. Easterly was employed by the Pizza Hut in the Halls area of Knoxville. Easterly devised a plan to rob the night manager when he left to make a bank deposit. Easterly initially approached a co-employee, Jay R. Denton, Jr., and asked if he was interested in robbing the manager. Denton was not interested.

Easterly was living with the appellant and the appellant's family. He eventually approached the appellant about his robbery plan. They discussed the plan. On the evening of August 23, 1991, the appellant and Easterly decided to execute the plan. The appellant provided Easterly with his .9mm pistol. They subsequently drove to a parking lot adjacent to the rear of the Pizza Hut in the appellant's Corvette. When they arrived, Easterly placed a ski mask over his head, went to the Pizza Hut parking lot, and waited behind a large trash container. Easterly saw the night manager exit the building. When the manager approached his car, the appellant appeared from behind the trash container, pointed the gun at the manager, and told the manager to drop the bank deposit bag. Easterly approached the manager, obtained the bag, and ran back to the appellant's Corvette.

As the appellant pulled from the parking lot, a sheriff's department patrol car appeared. The appellant told Easterly to get down in the seat. The appellant and Easterly then returned to the appellant's home. They divided the cash, which was estimated at $2,800. They subsequently burned the bank deposit bag, the ski mask, and the checks in a small charcoal grill behind the appellant's home.

The appellant manufactured an alibi. He called Easterly's estranged girlfriend, Charlene Abbott, on the evening in question. The appellant told her that if anyone questioned her about her whereabouts that night, she was to tell the person that she and Easterly were at the appellant's home. When Abbott insisted on knowing why she was to relate this story, the appellant told her "Darrell and I robbed a place." Later, Easterly called Abbott. He told her "[m]e and Mike robbed the Pizza Hut."

A few days after the robbery, the appellant called a meeting at his home. Easterly, Abbott, Dixie Malach, the appellant's daughter, Barbara Parker, the appellant's wife, Donna Owens, the appellant's girlfriend, and Bonita Bill, Easterly's mother, attended the meeting. The appellant told these people that if any one questioned them about the robbery, they were to say both Easterly and the appellant were at the appellant's home watching movies all night. The appellant told

Charlene Abbott that she was to say she and her young son ate dinner with Easterly at the Parkers that night. Because Easterly had a toothache, Abbott stayed at the Parkers' house with him.

Easterly was the prime suspect because the manager recognized his voice. The manager called him "Darrell" during the robbery. Easterly did not return to work after the robbery. When Easterly was taken into custody for another crime, he was arrested and charged with the robbery. He subsequently gave a statement to officers that implicated the appellant in the robbery.

The appellant and his wife testified that the appellant was at home when the robbery occurred. They testified that Easterly borrowed the Corvette. When he returned, he told the appellant that he had robbed the Pizza Hut and the victim recognized him. Easterly burned the bank deposit bag, ski mask, and checks in the charcoal grill. The appellant emphatically denied that he participated in the robbery. A friend of the appellant, who also worked at the Pizza Hut, testified that he called the appellant at 10:00 p.m., around the time of the robbery, and the appellant was at his home.

## I.

### A.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt."[1] This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.[2]

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence.[3] Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence.[4] To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.[5]

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court.[6] In *State v. Grace*,[7] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact.[8] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt.[9]

### B.

Before an accused can be convicted of the facilitation of a felony, the state must prove beyond a reasonable doubt that the accused (a) knew another person was going to commit a specified felony and (b) knowingly furnished substantial assistance in the

1. Tenn.R.App.P. 13(e).

2. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim.App.), *per. app. denied* (Tenn.1990).

3. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim.App.), *per. app. denied* (Tenn.1990).

4. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, *cert. denied*, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).

5. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

6. *Cabbage*, 571 S.W.2d at 835.

7. 493 S.W.2d 474, 476 (Tenn.1973).

8. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

9. *Tuggle*, 639 S.W.2d at 914.

commission of the felony although the accused did not possess the requisite intent to be guilty of the felony.[10] In other words, the state must prove the commission of a specified felony and the assistance the accused gave to the person committing the specified felony.[11]

■ In this case, the evidence established that Easterly committed the offense of aggravated robbery. Before the robbery, Easterly and the appellant discussed the commission of this offense. The appellant furnished Easterly with a pistol to commit the robbery. He took Easterly to the parking lot behind the Pizza Hut to commit the crime. After the robbery, the appellant drove Easterly from the situs of the robbery to the appellant's home. These facts, if believed by the jury, were sufficient to find the appellant guilty of the offense of facilitating the felony of aggravated robbery.

### C.

■ The appellant contends that he was convicted based upon the uncorroborated testimony of an accomplice. In this jurisdiction, it is a well-established rule of law that the testimony of an accomplice must be corroborated before an accused can be convicted of a criminal offense.

The manager of the Pizza Hut described the weapon used by the perpetrator of the robbery. Malach saw the appellant leave the residence with his pistol. Her description of the appellant's pistol matched the description given by the manager.

The robbery was reported to the Knox County Sheriff's Department at 10:18 p.m. Malach testified that the appellant and Easterly left the appellant's residence at approximately 9:45 p.m. and returned to the residence between 10:15 p.m. and 10:20 p.m.

The appellant called Charlene Abbott, Easterly's estranged girlfriend, shortly after the robbery to establish an alibi. When Abbott insisted on an explanation, the appellant advised her that "Darrell [Easterly] and I robbed a place."

Malach testified that Easterly and the appellant started a fire in a small charcoal grill in the back yard. While she did not know what had been set on fire, she stated that it had a horrible odor.

Easterly testified that the appellant took him to and from the situs of the robbery in a red Corvette. A deputy sheriff saw a red Corvette, the same color and type of vehicle being driven by the appellant, pulling from the parking lot adjacent to the Pizza Hut.

The appellant contends that Charlene Abbott was an accomplice, and thus her incriminating testimony could not be used to corroborate Easterly's testimony. The record establishes that she did not know about the robbery before it occurred, she did not participate in the robbery, and she did not provide any comfort or alibi after the occurrence of the robbery. It was the appellant, not Abbott, who made the contact regarding the alibi. The telephone call was the first Abbott learned of the robbery. In short, the evidence clearly establishes that she was not an accomplice as that term is defined in this jurisdiction's jurisprudence.

### D.

The evidence of the appellant's guilt is overwhelming. Each element of the offense was established. Easterly's testimony was clearly corroborated. In summary, the evidence contained in the record was sufficient for a rational trier of fact to find the appellant guilty of facilitation of aggravated robbery beyond a reasonable doubt.[12]

### II.

■ The appellant contends that the verdict of the jury was a compromised verdict and erroneously accepted by the court. The fallacy with this contention is that there is no evidence in the record to establish it.

10. Tenn.Code Ann. § 39–11–403(a).

11. *State v. Andre P. Virges,* Shelby County No. 02–C–01–9206–CR–00124, slip op. at 5, 1994 WL 51420 (Tenn.Crim.App., Jackson, February 23, 1994).

12. Tenn.R.App.P. 13(e); *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

This issue has been waived. The appellant has failed to tell this Court where the events in question occurred in the record.[13] Nevertheless, this Court has considered the argument advanced in support of this issue and finds it totally lacking in merit.

### III.

■ The appellant contends that the trial court committed error of prejudicial dimensions by failing to grant his motion for a new trial or judgment of acquittal. The basis for this contention is the failure of the state to provide the appellant with the statement of Donna Owens prior to trial in violation of both *Brady v. Maryland*[14] and Rule 16 of Tenn.R.Crim.P. He admits that he was furnished this statement at the conclusion of the first day of trial. He argues that the statement was exculpatory in nature because it contradicted the testimony of Dixie Malach. At the end of the first day, Malach's direct examination had been completed.

The appellant filed motions entitled "*Brady* Motion No. 1" and "*Brady* Motion No. 2." However, neither motion sought exculpatory evidence within the meaning of *Brady v. Maryland.* He also filed a motion entitled "Motion for Discovery." This motion stated in part:

> 7. Furnish promptly any evidence favorable to the Defendant by tending to negate his guilt, mitigate the degree of offense, reduce or prevent punishment, lead to the suppression of evidence, or which indicates the sources of potential impeachment of any witnesses.

The minutes of the trial court reflect that the "Motion for Exculpatory Evidence" was granted. The technical record does not contain a motion with this title. The record does not reflect that the trial court ruled upon the motion for discovery.

While the record does not reflect that the motion for discovery, which contained the request for exculpatory evidence, was brought to the attention of and addressed by the trial court, this Court will consider the issue on the merits. As stated, there was a request for exculpatory evidence and the trial court ordered the state to furnish the appellant with any exculpatory evidence in its possession or under its control.

Donna Owens was described as the appellant's girlfriend. It appears that she stayed in the same household with the appellant, the appellant's wife, and the appellant's children for a short time. Of course, Easterly also lived in the appellant's household. It also appears that at times the appellant stayed with Owens in her townhouse.

The statements given by Owens related that the appellant purchased prescription drugs from clients and friends on numerous occasions. She also stated that cocaine was ingested in the appellant's law office by the appellant's friends. The statement alluded to the appellant's possible criminal involvement with others in the past.

On the night in question, Owens left the appellant's residence at approximately 5:30 p.m. to visit her children. When she returned sometime after 7:30 p.m., both the appellant and Easterly were gone. The red Corvette was not there. When they returned, they parked the Corvette in the yard. Owens was not sure what time the two men returned, but she knew it was dark outside. She said she was at Parker's house "a good hour and maybe even two" before they returned. When the two men did return, they were laughing and drinking. The two men first went to a bedroom because Easterly wanted to call Charlene Abbott. She also saw the appellant and Easterly on the back deck. They had started a fire in the grill. She took the appellant a knife at his request.

Owens's statement also related the appellant's attempts to manufacture an alibi for the night in question. She heard the appellant talk to Ernest Wilson on the telephone the next morning. Wilson, who worked at the Pizza Hut, told the appellant that the manager recognized Easterly as the perpetrator of the robbery. The appellant told Wilson to tell anyone who talked to him that Wilson called the appellant at 10:00 p.m. the previous evening, and the appellant was

---

**13.** Tenn.R.App.P. 27(a)(7) and (g).

**14.** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

home. The appellant also attempted to have Owens assist in the fabrication of an alibi. She also related the names and relationship of each person the appellant enlisted to help corroborate the alibi.

■ In the landmark case of *Brady v. Maryland*,[15] the United States Supreme Court held that the prosecution has a constitutional duty to voluntarily furnish the accused with any exculpatory evidence that pertains to (a) the guilt or innocence of the accused and/or (b) the punishment which may be imposed if the accused is convicted of a criminal offense. The Court said in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."[16] Thus, for evidence to fall within the constitutional duty of disclosure, it must be established that the evidence is material to the defense or the sentence that may be imposed if the accused is found guilty.

In *United States v. Bagley*,[17] the United States Supreme Court set forth the criteria for determining whether evidence is exculpatory in the constitutional sense. The Court said that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[18] The Supreme Court reaffirmed the *Bagley* standard for determining materiality in *Kyles v. Whitley*.[19] The Tennessee Supreme Court followed *Bagley* and *Kyles* in *State v. Edgin*.[20]

In this case, the statements of Donna Owens were not material to appellant's case. If Owens had testified in conformity with her statements, she would have corroborated much of the testimony given by Easterly. Thus, her statements were not favorable. It cannot be plausibly argued that had the statements been received prior to trial, "results of a proceeding would have been different" in a manner favorable to the appellant. Not only were Owens's statements not material, they were not suppressed by the state.[21] Owens's statements were provided at the close of the first day of trial after the direct examination of Malach had been completed but before the defense began cross examination of her. Thus, the defense was not denied effective use of any information in the statements.

The appellant seems to argue that the statements, if received before trial, could have been used to impeach Malach's testimony. It has long been established that a statement given by one witness cannot be used to impeach another witness. Thus, Owens's statements could not have been used to impeach Malach as the appellant claims.

■ Owens was available as a witness to the appellant just as she was available to the sheriff's department and the prosecution.[22] As previously stated, Owens was the appellant's girlfriend. She was at his home on the night in question. Thus, if she could have supported the appellant's alibi, she would have testified at the trial as a defense witness. Given the explosive nature of her statements, it is understandable why Owens was not called as a defense witness.

The appellant indicates in his brief that Owens was contacted by the defense and she claimed to have no helpful information. She

**15.** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**16.** 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 219.

**17.** 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

**18.** 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

**19.** 514 U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490, 505–08 (1995).

**20.** 902 S.W.2d 387, 390–91 (Tenn.1995).

**21.** *Edgin*, 902 S.W.2d at 390.

**22.** The state is not required to disclose information that the accused already possessed or is able to obtain. *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1992); *State v. Caldwell*, 656 S.W.2d 894, 896–97 (Tenn.Crim.App.1983); *Banks v. State*, 556 S.W.2d 88, 90 (Tenn.Crim.App.), *cert. denied* (Tenn.1977).

was not interviewed by the defense.[23] Of course, if she had been interviewed, the appellant's representative conducting the interview would have been able to develop the same facts set forth in the statements she gave the sheriff's department.

This issue is clearly without merit.

## IV.

■ The appellant contends that the proof adduced at the trial is at variance with the presentment returned by the Knox County Grand Jury and the bill of particulars filed by the state. He argues that he was charged with the offense of aggravated robbery, tried for aggravated robbery, but convicted of facilitation of a felony, i.e., aggravated robbery.

It has long been established that when the accused in a criminal prosecution is tried for the commission of a crime, he is placed on trial for the principal offense alleged in the indictment as well as all lesser included offenses of that particular crime.[24] If the jury determines that the accused is not guilty of the principal offense, the jury may convict the accused of any lesser included offense that is supported by the evidence.

■ The offense of facilitation of aggravated robbery is a lesser included offense of aggravated robbery.[25] When the appellant went to trial for the offense of aggravated robbery, he was placed on notice that the jury could convict him of the lesser included offense of facilitation of aggravated robbery.

The arguments advanced in support of this issue are specious. Contrary to the position taken by the appellant, the state was not required to indict him for each lesser included offense.[26] Furthermore, there was no variance as he claims. The evidence was sufficient for the jury to convict the appellant for aggravated robbery. He provided the weapon, he transported Easterly to the situs of the robbery, and he shared in the money taken from the manager.[27] The jury opted to convict the appellant for the lesser included offense of facilitation under Tenn.Code Ann. § 39–11–403(a).

This issue is without merit.

## V.

The appellant, a lawyer, testified that he was acting as counsel for Easterly following the commission of the offense. He submitted a special request for an instruction on the attorney-client privilege. The trial court refused to include the request in his charge to the jury. Instead, the judge told the jury:

> I want to caution you that any offense that would relay [sic] around what he [the appellant] did or did not do, according to him, once he learned that Mr. Easterly had committed this offense, is not at issue here. The issue in this case is: Did he commit this robbery? Is he responsible for this robbery, or is he responsible for facilitating this robbery? Those are the two things that you are to consider and nothing else. We are not here to consider whether he is an accessory after the fact or whether he violated some attorney-client privilege or didn't, or whether there is some responsibility for that.
>
> That is not at issue. The thing at issue is: Is he guilty or not guilty of the crime of aggravated robbery? Is he guilty or not guilty of the crime of facilitation of aggravated robbery. So those are the only two

23. In *Marshall*, this Court said: "When exculpatory evidence is equally available to the prosecution and the accused, the accused 'must bear the responsibility of [his] failure to [diligently] seek its discovery.' *United States v. McKenzie*, 768 F.2d 602, 608 (5th Cir.1985), *cert. denied*, 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986)...." *Marshall*, 845 S.W.2d at 233.

24. *Strader v. State*, 210 Tenn. 669, 675–76, 362 S.W.2d 224, 227 (1962); *see State v. Tutton*, 875 S.W.2d 295, 297 (Tenn.Crim.App.1993), *per. app. denied* (Tenn.1994); *State v. Banes*, 874 S.W.2d 73, 80 (Tenn.Crim.App.1993), *per. app. denied* (Tenn.1994).

25. *See State v. Hicks*, 835 S.W.2d 32, 36 (Tenn.Crim.App.), *per. app. denied* (Tenn.1992); *State v. Michael A. Lewis*, 919 S.W.2d 62 (Tenn.Crim.App., 1995); *State v. Timothy H. Helfer and Ralph Lee Flatt*, Davidson County No. 01–C–01–9407–CR–00242, 1995 WL 567064 (Tenn.Crim.App., Nashville, September 27, 1995).

26. *See Banes*, 874 S.W.2d at 80.

27. *See* Tenn.Code Ann. § 39–11–402(2).

things that I want you to consider. Keep that in mind.

The appellant contends that the trial court committed error of prejudicial dimensions by refusing to include his special request in the charge given to the jury.

This Court has read and reread the argument submitted in support of this issue. This Court finds that the appellant has failed to illustrate how the attorney-client relationship was relevant to the issues to be resolved by the jury or the defense interposed by the appellant. He certainly was not prejudiced by the failure to give such an instruction.

■■■ The attorney-client privilege belongs to the client, in this case, Easterly.[28] Easterly related his conversations with the appellant before the robbery, the appellant's participation in the robbery, and what occurred after the robbery. In doing so, Easterly waived any attorney-client relationship that might have existed between himself and the appellant.

As previously stated, the appellant contends that Easterly committed the robbery without his knowledge. Easterly returned to the appellant's home, told him that he was in trouble because he had robbed the Pizza Hut, and the manager had recognized him. The appellant argues that what occurred after Easterly returned fell within the attorney-client privilege. However, this did not prevent the appellant from testifying in precise detail of what occurred after Easterly returned. He related the entire conversation between Easterly and himself. In short, the attorney-client privilege was not invoked nor was it mentioned by Easterly or the state. It was the appellant who sought to invoke the attorney-client privilege.

The appellant's efforts to fabricate an alibi with his friends and family does not fall within the attorney-client privilege. These were communications with the appellant's wife, girlfriend, Easterly's mother and girl-friend, the appellant's sister, and his sister's boyfriend. What was said to these people certainly is not protected by the attorney-client relationship. Moreover, what the appellant may have said to Easterly in the presence of these individuals is not protected by the attorney-client privilege.

This issue is without merit.

## VI.

. The appellant contends that the trial court committed prejudicial error by refusing to grant the appellant judicial diversion, erroneously applying certain enhancement factors to increase his sentence, and requiring the appellant to serve the sentence in the Department of Correction. This Court, following a *de novo* review of the record and the · sentencing issues, finds that the trial court properly sentenced the appellant.

### A.

#### (1)

■■■ When an accused challenges the length and manner of serving a sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." [29] However, there are exceptions to this rule. First, the requirement that this Court presume that the determinations made by the trial court are correct is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." [30] Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused.[31] Third, the presumption does not apply when the determinations made by the trial court are based upon uncontroverted facts.[32]

■■■ In conducting a *de novo* review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sen-

---

28. Tenn.Sup.Ct.R. 8, EC 4–2, DR 4–101.

29. Tenn.Code Ann. § 40–35–401(d).

30. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

31. *State v. Bonestel,* 871 S.W.2d 163, 166 (Tenn. Crim.App.1993).

32. *State v. Raines,* 882 S.W.2d 376, 383 (Tenn. Crim.App.), *per. app. denied* (Tenn.1994).

tencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and circumstances of the offense, and (f) the appellant's potential for rehabilitation.[33]

 The trial court, as the trier of fact at sentencing hearings, has the opportunity to observe the manner and the demeanor of the witnesses. Consequently, this Court gives great weight to the determinations made by the trial court concerning the credibility of the witnesses; and this Court will not interfere with the trial court's findings of fact in this regard unless the evidence contained in the record clearly preponderates against these findings.[34] However, there are exceptions to this rule. This Court will not give such deference to the trial court's findings of fact when evidence is stipulated or is in the form of a deposition, a statement contained in the presentence report, or a record introduced as evidence. In these instances, the trial court does not observe the manner and demeanor of the witnesses.[35]

 When the appellant contends that the trial court committed error in refusing to impose a sentence pursuant to Tenn.Code Ann. § 40–35–313, commonly referred to as "judicial diversion," a different standard of appellate review applies. In reviewing such issues, this Court must determine whether the trial court abused its discretion by failing to sentence the accused pursuant to the statute.[36]

 In this Court, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence imposed by the trial court was erroneous.[37]

(2)

 The appellant submits that the record supports several mitigating factors; and these factors should have been applied by the trial court to reduce the length of his sentence. The trial court found that the record did not support any of these factors.

The appellant contends that (a) he played a minor role in the commission of the offense;[38] (b) while guilty of the offense, he committed the crime in question under unusual circumstances which make it highly unlikely that a sustained intent motivated his conduct;[39] and (c) he has a history of long service to his community because he served as a police officer and was an attorney.[40] The trial court correctly found that these factors are not supported by the record.

The trial court found that Easterly was a young man who looked to the appellant for advice and guidance. Moreover, the appellant discussed the robbery plan with Easterly, furnished the weapon that Easterly used in the robbery, and provided transportation to and from the situs of the robbery. Later, the appellant made numerous efforts to fabricate an alibi for Easterly and himself. In short, the appellant played a major role in the commission of the offense.

The trial court found that there was nothing unusual about the facts in this case. Moreover, the appellant had a definite sustained intent as illustrated by the facts in the preceding paragraph. The appellant was a major participant in the commission of the crime.

The trial court found that the appellant left the Knoxville Police Department "under less than what [the trial court] consider[ed] ideal circumstances." As a lawyer, the appellant has been reprimanded and his license has

33. Tenn.Code Ann. § 40–35–103 and –210; *State v. Scott*, 735 S.W.2d 825, 829 (Tenn.Crim.App.), *per. app. denied* (Tenn.1987).

34. *Raines*, 882 S.W.2d at 383.

35. *Raines*, 882 S.W.2d at 383–84.

36. *Bonestel*, 871 S.W.2d at 167; *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn.Crim.App. 1992); *State v. George*, 830 S.W.2d 79, 80 (Tenn. Crim.App.1992).

37. Sentencing Commission Comments to Tenn. Code Ann. § 40–35–401(d); *Ashby*, 823 S.W.2d at 169; *State v. Fletcher*, 805 S.W.2d 785, 786 (Tenn.Crim.App.1991).

38. Tenn.Code Ann. § 40–35–113(4).

39. Tenn.Code Ann. § 40–35–113(11).

40. Tenn.Code Ann. § 40–35–113(13).

been suspended. There was a suspension hearing regarding his misconduct as an attorney pending.

There are no mitigating factors supported by the record.

(3)

The trial court found that the record supported three enhancing factors. These factors were: (a) the appellant was a leader in the commission of the offense, which involved two people;[41] (b) the offense was committed under circumstances where the potential for bodily injury to the victim was great;[42] and (c) the appellant violated a position of public trust.[43]

The trial court found that while Easterly committed the offense, the appellant put Easterly in a position to commit the crime. Easterly apparently was not going to commit the crime alone. He had asked a co-employee to join with him in the commission of the offense. The co-employee refused to assist Easterly. The appellant and Easterly talked on more than one occasion about committing the crime. The appellant, as previously stated, supplied the weapon and the transportation. Easterly had an unreliable "junker" for a vehicle and he did not own a weapon. The appellant was clearly a leader in the commission of this offense.

Easterly had been drinking alcohol most of the day. The appellant, knowing that Easterly was intoxicated, placed a gun in his hand to commit the offense. It has been stated in several opinions of this Court that alcohol and firearms are a volatile combination as someone will likely be hurt. Thus, the trial court properly found that the offense was committed under circumstances where the potential for bodily injury was great.

The trial court should not have enhanced the appellant's sentence on the grounds that he violated a public trust. The appellant had left the Knoxville Police De-partment and was paid disability benefits following his departure. Also, he did not commit this offense in his capacity as a lawyer. While he attempted to use his professional status as a shield in this case, he was not acting as counsel for Easterly when the offense was committed.

(4)

The fact the trial court erroneously applied one enhancement factor does not equate to a reduction in the sentence imposed.[44] This Court finds that the sentence imposed is both proper and reasonable based upon the circumstances of the offense and the appellant's continuing efforts to fabricate an alibi for Easterly and himself. Also, as a former police officer and lawyer, the appellant was acutely aware that his conduct constituted a criminal offense under the laws of this jurisdiction.

B.

(1)

If an accused is convicted of a Class C, D, or E felony and is sentenced as either an especially mitigated offender or a standard offender, there is a presumption, rebuttable in nature, that the accused is a favorable candidate for alternative sentencing unless disqualified by some provision of the Tennessee Criminal Sentencing Reform Act of 1989.[45]

The sentencing process must necessarily commence with a determination of whether the accused is entitled to the benefit of the presumption.[46] As the Supreme Court said in *Ashby:* "If [the] determination is favorable to the defendant, the trial court *must* presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statuto-

---

41. Tenn.Code Ann. § 40–35–114(2).

42. Tenn.Code Ann. § 40–35–114(16).

43. Tenn.Code Ann. § 40–35–114(15).

44. *State v. Keel,* 882 S.W.2d 410, 423 (Tenn. Crim.App.), *per. app. denied* (Tenn.1994).

45. Tenn.Code Ann. § 40–35–102(6).

46. *Ashby,* 823 S.W.2d at 169.

958

ry provision[s]." [47] The presumption can be successfully rebutted by facts contained in the presentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source provided it is made a part of the record.[48]

In this case, the appellant was entitled to the presumption that he was a favorable candidate for alternative sentencing. This Court must review the record to determine whether the state successfully overcame the presumption.

### (2)

■ The appellant contends that the trial court should have granted him judicial diversion or some form of alternative sentencing. The trial court refused to grant him judicial diversion or permit service of the sentence on probation or in a community corrections program.

■ When an accused has been convicted of a misdemeanor or certain designated felonies, the trial court may, in the exercise of its discretion, defer further proceedings and place the accused on probation without entering a judgment of guilty.[49] The period of probation must equal the maximum for the offense if the accused stands convicted of a misdemeanor, or be no longer than the maximum sentence if the accused is convicted of a felony.[50] If the accused successfully completes the requisite probationary period, the trial court is required to discharge the accused and dismiss the proceedings;[51] and the accused may have the official records of the proceeding expunged after dismissal of the proceedings.[52] This procedure is commonly referred to as judicial diversion.[53]

■ Before an accused is eligible for judicial diversion, the record must reflect that the accused (a) was convicted of a misde-

meanor, which is punishable by imprisonment, or a Class C, D, or E felony, (b) has never been convicted of a felony or a Class A misdemeanor, and (c) consents to the deferment of the proceedings and the imposition of probation for up to the maximum length of punishment for the crime in question.[54] The fact that an accused meets these prerequisites does not entitle the accused to judicial diversion as a matter of right. The statute states that a trial court "may" grant judicial diversion in appropriate cases. Moreover, the accused is not entitled to the presumption created by Tenn.Code Ann. § 40-35-102(6) when judicial diversion is being considered. Thus, whether an accused should be granted judicial diversion is a question which addresses itself to the sound discretion of the trial court. As indicated, this Court will not interfere with the refusal of the trial court to grant judicial diversion if there is " 'any substantial evidence to support the refusal' " contained in the record.[55]

■ The criteria that the trial court must consider in deciding whether a qualified accused should be granted judicial diversion includes: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others.[56] The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

■ The trial court must consider all of the criteria enumerated when determining whether to grant judicial diversions. When the trial court refuses to grant judicial diversion to an accused, the court should clearly

47. 823 S.W.2d at 169. (Emphasis added).

48. *Bonestel,* 871 S.W.2d at 167.

49. Tenn.Code Ann. § 40-35-313(a)(1).

50. Tenn.Code Ann. § 40-35-313(a)(1).

51. Tenn.Code Ann. § 40-35-313(a)(2).

52. Tenn.Code Ann. § 40-35-313(b).

53. *See State v. George,* 830 S.W.2d 79, 80 (Tenn. Crim.App.1992).

54. Tenn.Code Ann. § 40-35-313(a)(1).

55. *Anderson,* 857 S.W.2d at 572 (quoting *State v. Hammersley,* 650 S.W.2d 352, 356 (Tenn.1983)).

56. *Bonestel,* 871 S.W.2d at 168.

articulate and place in the record the specific reasons for its determinations.

■ Deterrence in judicial diversion cases is to be considered in the same manner as it is in probation cases. In *State v. Michael*,[57] the Supreme Court said "the case law and the legislative declaration envision an examination of the deterrence factor in the context of each case and assigning it such weight, credit and value as the circumstances warrant."

### (3)

■ Probation is a privilege or act of grace which may be granted to an accused who is eligible and worthy of this largesse.[58] An accused is eligible for probation if the sentence actually imposed is eight (8) years or less, unless the accused stands convicted of (a) manufacturing, delivering, selling, or possessing with the intent to manufacture, deliver or sell a Schedule I drug,[59] (b) manufacturing, delivering, selling, or possessing with the intent to manufacture, deliver or sell certain quantities of illicit narcotics,[60] (c) aggravated kidnapping,[61] (d) aggravated robbery,[62] or (e) aggravated sexual battery.[63] In this case, the appellant was eligible for probation. The sentence imposed was five (5) years.

■ In determining whether an accused should be granted probation the trial court and this Court must consider and weigh all of the *Stiller* factors.[64] The *Stiller* factors include the accused's criminal record, social history, present physical and mental condition, the circumstances of the offense, the deterrent effect upon criminal activity of the accused as well as others, and the accused's potential for rehabilitation and treatment.[65]

### (4)

The trial court refused to grant the appellant an alternative sentence. The court stated that confinement was necessary to avoid depreciating the seriousness of the offense as well as to deter the appellant and others from committing such an offense.[66] Based upon the circumstances of the offense and the appellant's past history of reprimands and suspension from the practice of law, the need for deterrence, and his continuous efforts to fabricate an alibi, the appellant was not entitled to an alternative sentence. Moreover, the trial court did not abuse its discretion in refusing to grant the appellant judicial diversion.

WADE, J., and WALTER C. KURTZ, Special Judge, concur.

**57.** 629 S.W.2d 13, 15 (Tenn.1982).

**58.** *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn.1974).

**59.** Tenn.Code Ann. § 39–17–417(b).

**60.** Tenn.Code Ann. § 39–17–417(i).

**61.** Tenn.Code Ann. § 39–13–304.

**62.** Tenn.Code Ann. § 39–13–402.

**63.** Tenn.Code Ann. § 39–13–504. See Tenn.Code Ann. § 40–35–303.

**64.** *Bonestel*, 871 S.W.2d at 169.

**65.** *Stiller*, 516 S.W.2d at 620; *see* Tenn.Code Ann. § 40–35–103(5); *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn.Crim.App.), *per. app. denied* (Tenn.1990).

**66.** Tenn.Code Ann. § 40–35–103(1)(B).