# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
December 13, 2011 Session

## STATE OF TENNESSEE v. JAMES BASIL CONNER

### Appeal from the Knox County Criminal Court
### No. 95068     Bob R. McGee, Judge

### No. E2010-01919-CCA-R3-CD-FILED-OCTOBER 5, 2012

The defendant pled guilty to two counts of aggravated burglary, Class C felonies, and was sentenced as a range I, standard offender to two concurrent three-year sentences, to be served on probation. The defendant requested judicial diversion, but the trial court denied this request. The defendant now appeals, claiming that the trial court abused its discretion by failing to grant him judicial diversion. After carefully reviewing the record and the arguments of the parties, we conclude that the trial court failed to expressly consider numerous criteria that it was required to consider in making the determination of whether to grant or deny judicial diversion. Consequently, the judgments of the trial court are reversed and the case is remanded to the trial court for reconsideration in light of all relevant factors in a manner consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed;
Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Mark Stephens, District Public Defender, and Nathaniel Evans, Assistant Public Defender, for the appellant, James Basil Conner.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Debbie Malone, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On January 8, 2010, the defendant accompanied another man, Mr. Darell Corey Howard, and assisted him in his efforts to burglarize a house by standing outside the house and receiving stolen property that Mr. Howard passed to him through an open window. Three days later, the defendant and a female acquaintance assisted Mr. Howard in committing another aggravated burglary of a different house. They gained entry into this second residence by breaking the rear window into the kitchen. Fingerprints recovered from this broken window were identified as belonging to the defendant by crime scene technicians. On January 10, 2010, the defendant waived his *Miranda* rights and confessed to his participation in both crimes.

On July 7, 2010, the defendant pled guilty to two counts of aggravated burglary pursuant to a plea agreement. According to the terms of that agreement, the State would recommend that the defendant receive a pair of three-year current sentences as punishment. In addition, the State agreed not to oppose the defendant's request for probation or judicial diversion. The trial court accepted the defendant's guilty plea and imposed two concurrent sentences of three years each. During the plea colloquy, the trial court specifically explained to the defendant that while he had applied for probation and judicial diversion, that "application is simply a request," and "[n]o promise is being made . . . that you're going to get . . . diversion." The defendant acknowledged that he understood.

On August 12, 2010, the trial court held a further hearing concerning the defendant's sentencing, at which time the court heard arguments from the parties and reviewed the defendant's presentence report. The presentence report reflected that the defendant was placed on probation for truancy on November 3, 2006, and this probation was revoked for an undefined offense on May 7, 2007. The presentence report also reflected that the defendant had reported smoking marijuana "on a daily basis" and had a young daughter. The defendant claimed in the report to have been briefly employed by both Taco Bell and another business known as "Affordable Vinyl," although these employment claims could not be verified. The defendant acknowledged that he was currently unemployed. The report concluded that the defendant was a "medium risk" for successfully completing probation.

Ultimately, the trial court granted the defendant's request for probation but denied his request for judicial diversion, stating:

> Well, it does appear that he's a proper candidate for probation. I don't have any problem with that. But when we talk about diversion, we look for more than the proposition that it would be beneficial to [the defendant]. That's the distinction between probation and diversion. In diversion we're looking at how it is also beneficial to the community for him to get it. And I'm not

seeing how it's going to benefit the community for [the defendant] to be able to avoid the conviction. I can certainly see how it's beneficial to the community for him to be placed on probation and given a chance to make the victim whole. And to stay out of our prison system. But I must decline the defendant's application for diversion.

Following this discussion, the court reiterated the sentences it had previously imposed on the defendant and ordered him placed on probation. The defendant filed a timely notice of appeal of the trial court's decision denying judicial diversion.

On August 18, 2010, prior to filing that notice of appeal, the defendant filed a "Motion to Reconsider and Request for Evidentiary Hearing." In that motion, the defendant requested that the trial court reconsider its decision to deny judicial diversion. With the consent of the parties, the defendant's motion was treated as a Motion to Reduce Sentence filed pursuant to Tennessee Rule of Criminal Procedure 35, and a hearing was held on September 23, 2010.[1]

At that hearing, the defendant called Ms. Priscilla Cardwell, his probation officer, who testified that the defendant had been on probation for over a month. Ms. Cardwell reported that the defendant had shown up on time to his intake evaluation. However, he tested positive for marijuana that day. Ms. Cardwell testified that she met with the defendant again three or four weeks afterward, and he tested negative for marijuana at that time. Ms. Cardwell testified that the defendant had a payment plan in place to provide restitution to his victims but that he had yet to make his first payment. During cross-examination, Ms. Cardwell clarified that the defendant had not yet made any payment whatsoever toward court costs or restitution.

Next, the defendant testified that on January 8, 2010, he accompanied Mr. Howard, an individual he had known for five years, to someone else's house. The defendant testified that Mr. Howard broke the back window and went that house and that he stood at the back window. Mr. Howard then handed him items out the window and eventually came out of the house. The defendant testified that Mr. Howard retained possession of all the items that were taken from the house, and the defendant received only seventy-five dollars for his assistance. The defendant testified that three days later, Mr. Howard contacted him again concerning

---

[1] The defendant asserts that agreeing to this amendment was a mistake, as judicial diversion was the only remedy sought by the defendant's motion, and judicial diversion is not a remedy that is available under Rule 35. *See State v. Marcus J. Turco*, No. W2001-01085-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 747, at *8 (Tenn. Crim. App. 2001). There is no evidence in the record that the defendant ever brought this problem to the attention of the trial court.

another burglary, and the defendant again provided assistance. The defendant testified that Mr. Howard contacted him concerning a third burglary, but he told Mr. Howard that he did not want any part of it and provided him with no further assistance of any kind.

The defendant testified that when he was contacted by detectives, he told them everything about his involvement in the crimes and accepted responsibility for his actions. He testified that he owed almost $19,000 in restitution to the victims and that he expected to pay off that amount at some point during his lifetime.

The defendant testified that he had dropped out of high school when his father died and had taken on a full-time job, at which he worked for almost two years. He testified that he had lived with his mother from July of 2009 until very recently and that while he was living with her he gave her a portion of his paycheck to help cover living expenses. He testified that on February 20, 2010, he suffered a severely broken ankle that prevented him from working for an extended period. In closing, the defendant promised one of his victims – who was apparently in the courtroom – that he would never return to her house, and he stated "You have no fear of me" and "I'm sorry."

On cross-examination, the defendant acknowledged that he had continued to use marijuana even after he had been arrested for the aggravated burglaries. The defendant also acknowledged that he was aware that he was about to become a father when he committed the burglaries, although initially he had some doubts concerning his paternity. On redirect examination, the defendant stated that the last time he used marijuana was before he was sentenced in this case.

The final witness for the defense was Ms. Robin Denise Conner, the defendant's mother. The defendant's mother testified that the defendant was raised in a "happy home." She testified that the defendant's father did drugs, so she had separated from him. As a result of this separation, the defendant was forced to act as a father figure as well as an older brother to his younger brothers. She testified that when the defendant turned seventeen, she took him out of school so that he could work a full-time job and help provide for the family. She testified that the defendant gave her at least half his paycheck when he was working and living at home.

The defendant's mother testified that the defendant had broken his ankle "pretty bad" and that he was not able to walk for a period of time. She testified that he underwent physical therapy for at least three months while he was recovering. The defendant's mother testified that the defendant's burglaries were out of character for him and that she was sure he would never do it again.

After receiving this testimony and listening to the arguments from the parties, the trial court denied the defendant's motion, explaining:

First of all, [the defendant] has been dealt with mercifully already. He stands convicted of two aggravated burglaries. Those are class C felonies. Even as a range one standard offender, he could have gotten a maximum of 12 years in this case. Instead, he got the minimum sentence, three years in each case. And the sentences were run concurrently, which in effect gave him one burglary free.

So he has been treated well by the criminal justice system. And certainly we wish good things for [the defendant]. We hope he makes a success out of the rest of his life.

But to place a person on diversion means that he's going to have the opportunity to – the possibility of having the convictions – or not having any conviction on his record at all. Which means no one can know or would know that he did assist in the breaking in of two homes.

Now, we look for a couple of things, this Court does. One is evidence that there is like one break, one episode that is a complete and total aberration. Just totally out of character for the defendant. And that might have been said for this codefendant who only had one conviction. It can't be said for [the defendant], he did it again. He committed two burglaries.

The other thing we look for is whether or not there is some benefit that [the defendant] would be able to confer on the community or on society not having a record that he will not be able to confer with a record. For example, a profession that he would not be able to practice. A profession that is beneficial to the community. Military service. There are a number of things – a number of situations where the defendant actually is positioned to benefit the community if he doesn't have a record, and not be able to benefit the community if he does. [The defendant] is not in that position either.

Hopefully he'll get a good job. Hopefully he'll stay out of trouble. Hopefully he'll pay this restitution. It's an awful lot of money. But the Court simply does not see the benefit to be conferred upon the community. Of course there would be a benefit conferred upon [the defendant], and that's what we look at in probation. Certainly [the defendant] presents as a good candidate for probation. And I think the Court has already placed him on

State probation.

> The motion to reduce the sentence by in effect setting aside the judgment and placing him on diversion, I'm afraid there simply aren't grounds for it. And the court does respectfully deny the motion.

The defendant filed a timely notice of appeal of this decision as well, and the defendant's appeals were consolidated. The single issue preserved for our review in both appeals is whether the trial court abused its discretion in failing to sentence the defendant to judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. Our decision follows.

## ANALYSIS

The defendant claims that the trial court erred by denying his motion for judicial diversion. Judicial diversion, a program which offers convicted defendants the opportunity to avoid having a permanent record of that conviction, is similar to pretrial diversion, except "judicial diversion follows a determination of guilt and the decision to grant diversion rests with the trial court, not the prosecutor." *State v. Electroplating, Inc.*, 990 S.W.2d 211, 228 (Tenn. Crim. App. 1998). "The lower court's denial of judicial diversion is subject to reversal on appeal only if that court abused its discretion." *Id.* at 229. "[T]his Court will not interfere with the refusal of the trial court to grant judicial diversion if there is any substantial evidence to support the refusal contained in the record." *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (internal quotation omitted).

The statutory basis for judicial diversion is found in Tennessee Code Annotated section 40-35-313, which provides in pertinent part:

> The court may defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty and with the consent of the qualified defendant. The deferral shall be for a period of time not less than the period of the maximum sentence for the misdemeanor with which the person is charged or not more than the period of the maximum sentence of the felony with which the person is charged.
> . . . .
> Upon violation of a condition of the probation, the court may enter an adjudication of guilt and proceed as otherwise provided. If, during the period of probation, the person does not violate any of the conditions of the probation, then upon expiration of the period, the court shall discharge the person and

dismiss the proceedings against the person.

T.C.A. §§ 40-35-313(a)(1)(A), (a)(2). The availability of judicial diversion is limited to certain specified crimes and to defendants of certain classifications. *See* T.C.A. § 40-35-313(a)(1)(B). There is no presumption in favor of judicial diversion under section 40-35-313. *Electroplating, Inc.*, 990 S.W.2d at 229. "In determining whether to grant judicial diversion, the trial court must consider[:] (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused." *Id.* "[T]he record must reflect that the court has weighed all of the factors in reaching its determination," and "if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." *Id.* If a trial court fails in this duty, a reviewing court may "determine whether the trial court reached the correct result notwithstanding its failure to explain its reasoning." *Id.*

We have quoted the relevant portions of the transcript above in full, and it is evident from the trial court's statements that it failed to expressly consider and weigh all of the required criteria. The trial court expressly considered only whether granting judicial diversion would be of overall benefit to the defendant and to society (factor (g)). While the trial court found this factor to weigh against diversion, the court did not explain why this factor, standing alone, was sufficient to outweigh all of the other factors. Given the circumstances, we conclude that we should remand the case for reconsideration of judicial diversion in light of the relevant criteria. On remand, the trial court shall expressly consider and weigh the accused's amenability to correction, the circumstances of the offenses, the accused's criminal record and social history, the accused's mental and physical health and the other factors required by *Electroplating* in addition to factor (g), the interests of society and the accused. *See id.* If the trial court again determines that consideration of factor (g) so strongly weighs against judicial diversion that it outweighs any and all other factors, the court will explain why this factor, standing alone, suffices to outweigh all of those factors, as required by *Electroplating*. *Id.*

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are reversed and the case is remanded for resentencing.

_____
JOHN EVERETT WILLIAMS, JUDGE