# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
September 14, 2010 Session

## STATE OF TENNESSEE v. ANDREW COLIN HICKS

**Appeal from the Criminal Court for Shelby County**
**No. 08-04403     Paula Skahan, Judge**

**No. W2009-02058-CCA-R3-CD  - Filed February 8, 2011**

The Defendant, Andrew Colin Hicks, appeals as of right from the trial court's denial of judicial diversion following his guilty plea to facilitation of attempted aggravated arson, a Class C felony. Following a sentencing hearing, the trial court imposed a sentence of three years probation. The Defendant contends that the trial court erred by denying his application for judicial diversion. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Charles W. Gilchrist, Jr., Memphis, Tennessee, for the appellant, Andrew Colin Hicks.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Lynn Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The record reflects that the Defendant and four co-defendants were indicted for attempted aggravated arson, a Class B felony. The offense arose from the March 23, 2008, burning of a homeless man, Jeffrey Martin, in Shelby County, Tennessee. On that night, the Defendant met with his four co-defendants and drove them in his truck to go watch "street races." The record reflects that the four co-defendants consumed various amounts of alcohol that night, but the Defendant testified that he did not have any alcohol because he was driving. At some point that evening, the men discussed a prior confrontation between one

of the co-defendants and a homeless man who lived behind the Lowe's home improvement store in Bartlett, Tennessee. The defendants decided to go and confront the homeless man. The Defendant drove his co-defendants to the Lowe's parking lot. When they arrived, he and the others went into the wooded area behind the store and found a campsite and tents that the victim and another homeless man, Brenner Holleman, were living in. The defendants confronted Mr. Holleman and threatened to take his bicycle. One of the defendants urinated in his campsite, and someone threw a log or rock at his tent. Mr. Holleman, fearing for his safety, picked up a board and came towards the defendants causing them to run away from his campsite.

After the defendants returned to the truck, co-defendant Tyler Eggleston suggested that they make Molotov cocktails and burn down the victims' tents. The Defendant then drove to a gas station and Mr. Eggleston filled two beer bottles with gasoline. The Defendant then drove back to the crime scene where his four co-defendants got out of the truck. The Defendant admitted that he stayed in the truck to serve as the "getaway driver." Co-defendants Michael Grace and Wesley Ray stayed near the truck while Mr. Eggleston and co-defendant Zachary Parrish went toward the victims' campsite with the Molotov cocktails. The victim, who had been away from the campsite during the initial confrontation, came up behind Mr. Parrish. Mr. Parrish spun around striking the victim in the face with the Molotov cocktail, causing it to explode, and engulfing the victim in flames. The co-defendants fled the campsite and returned to the truck where the Defendant drove them away. One of the co-defendants told the Defendant that they had set a man on fire. The Defendant drove his four co-defendants back to their cars, then drove home and went to sleep. No one attempted to help Mr. Martin or called for help. Mr. Martin suffered second and third degree burns over his face, chest, and arms.

The Defendant testified at his sentencing hearing that he served as a volunteer with the Macon Volunteer Fire Department and worked at a sandwich shop. The Defendant also testified that he voluntarily paid child support for his daughter and maintained a "working" relationship with her mother. The Defendant stated that he wanted to become a commercial pilot, a paramedic, or join the military. The Defendant testified that he had been enrolled at Southwest Tennessee Community College but that he dropped out because of his arrest. The Defendant stated that he wanted to be placed on judicial diversion because if he had "any kind of felony or anything on [his] record . . . there's no chance in becoming anything of what [he] want[s] to be." When asked what he has learned from this experience, the Defendant responded "[h]ow quickly your life can go down hill . . . everything's on the line . . . I can lose everything." The Defendant explained his actions by stating that "[f]or some odd reason that night [he] decided to be a follower and not a leader."

In deciding whether to grant the Defendant's application for judicial diversion, the

trial court found that the Defendant was very amenable to correction. The trial court found that the Defendant's social history, physical health, and mental health were all good. However, the trial court found the circumstances of the offense to be "horrendous" and that to deny diversion would serve as a strong deterrent to others. The trial court stated that whether judicial diversion would serve the interest of the public as well as the accused was "the stumbling point." The trial court then stated that "in this case I'm going to lean a little bit more heavily with the interest of the victim . . . ." The trial court found that the Defendant, in his role as the driver, was more culpable than co-defendants Gracie and Ray. Ultimately the trial court concluded that "I do think we need to send a message even for somebody who did not have the [Molotov] cocktail but was actively involved in assisting those that did in carrying out this horrible act." The trial court denied the Defendant's application for judicial diversion and sentenced him to three years probation with the requirement that he perform 50 hours of community service with a homeless shelter.

## ANALYSIS

The Defendant contends that the trial court abused its discretion in denying his application for judicial diversion. The Defendant argues that all of the factors considered weigh in favor of judicial diversion except for the deterrence value to others. The Defendant also contends that the trial court failed to adequately explain why the factors supporting denial of judicial diversion outweighed the factors supporting granting judicial diversion. The State responds that the trial court properly considered and evaluated all of the relevant factors and that the record supports the trial court's decision.

There is no dispute that the Defendant is eligible for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B). The decision to grant judicial diversion lies within the discretion of the trial court and will not be disturbed on appeal unless it is shown that the trial court abused its discretion. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). A denial of judicial diversion will not be overturned if the record contains any substantial evidence to support the trial court's action. Id. When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's mental and physical health, and (6) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants. State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997).

The decision should be based on whether the grant of diversion will serve the ends of justice for both the public and the defendant. Lewis, 978 S.W.2d at 566. The record must reflect that the trial court considered and weighed all these factors in arriving at its decision. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Additionally,

"[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id. (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). However, "[t]he denial of judicial diversion may be based solely on the nature and circumstances of the offense, so long as all of the other relevant factors have been considered, and this factor outweighs all others that might favorably reflect on the [d]efendant's eligibility." State v. George William King, No. M2001-02026-CCA-R3-CD, 2002 WL 31520648, at *4 (Tenn. Crim. App. Nov. 13, 2002) (citing State v. Curry, 988 S.W.2d 153, 158 (Tenn. 1999)).

The record reflects that the trial court considered and weighed all of the required factors in arriving at its decision. The trial court found the Defendant, in his role as the driver, more culpable than two of his co-defendants. The nature and circumstances of this offense are horrific, the Defendant actively participated in setting a homeless man on fire, and this factor alone could have outweighed all the other factors reflecting favorably on the Defendant's eligibility. However, the trial court did not rely solely on the horrendous nature of the crime but also held that the deterrence value to others and the interests of the public weighed against granting judicial diversion. The trial court explained on the record why these factors outweighed the others and expressed her concern that crimes against animals are often treated more seriously than crimes against the homeless. The trial court concluded that given the Defendant's culpability in the offense, the denial of his application for judicial diversion would send a message that crimes against the homeless are taken seriously. Following our review, we conclude that the trial court did not abuse its discretion in denying the Defendant's application for judicial diversion. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE