# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 27, 2011 Session

### STATE OF TENNESSEE v. SEAN NAUSS, ALIAS

**Appeal from the Criminal Court for Knox County**
**No. 93205    Bob R. McGee, Judge**

---

**No. E2011-00002-CCA-R3-CD-FILED-MARCH 22, 2012**

---

The Defendant, Sean Nauss, alias, appeals as of right from the trial court's denial of judicial diversion following his guilty plea to three counts of statutory rape, a Class E felony. Following a sentencing hearing, the court imposed a sentence of three years' probation. The Defendant contends that the trial court erred in denying his application for judicial diversion because the applicable factors weigh heavily in favor of diversion. After a review of the record, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Remanded.**

D. KELLY THOMAS, JR., J. delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Tommy K. Hindman, Knoxville, Tennessee, for the appellant, Sean Nauss, alias.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; Eric M. Counts, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The record reflects that the Defendant was originally indicted on four counts of statutory rape involving his 14-year-old neighbor, K.L.[1]  Counts one, two, and four were

---

[1] In an effort to protect privacy, this court refers to rape victims by using their initials.

based on the Defendant's oral penetration of the victim, and count three was based on the Defendant's alleged digital penetration of the victim's vagina but was later dismissed pursuant to the plea agreement. The Defendant pled guilty to three counts of statutory rape in exchange for the State's agreement that the Defendant was "an appropriate candidate for probation." The parties also agreed that the Defendant's application for judicial diversion would be the only remaining issue.

The Defendant presented two witnesses in support of his request for judicial diversion. Jama Huskey testified that she had known the Defendant for ten years and that he and his brother called her their "second mom." Ms. Huskey explained that she was the Defendant's neighbor from 2001 to 2006, and that "[t]he Nauss family in general are close personal friends to [her] family." Ms. Huskey stated that she has three children, two of which were boys who were friends with the Defendant and his younger brother, and that there was daily interaction between the families. She also stated that she continued to have a relationship with the Defendant and that she believed him to be "a fine upstanding young man." Ms. Huskey went on to explain that the Defendant was a leader and "a wonderful kid to watch grow up." When asked whether the Defendant's convictions for statutory rape affected her opinion of him, Ms. Huskey responded, "in no way does it change [my] opinion of him."

Mrs. Huskey also stated that the Defendant did not tell her that he used his "position as a cadet" to rape a girl, but she maintained that the fact "that he was older than a lady he had relations with ... [did] not change [her] opinion of him at all."

Jensen Cornelius stated that he had known the Defendant since 2001 when they were on the swim team together. Mr. Cornelius testified that his relationship with the Defendant and the Defendant's family had been ongoing since 2001. They often assist him in his current position as their former high school's swim coach. He explained that he always thought the Defendant was trustworthy and responsible. Mr. Cornelius testified that the Defendant's plea to statutory rape did not change his opinion of the Defendant because he believed the Defendant had "a bad moment" and "made a mistake," but "he [was] truly sorry." When questioned on cross-examination about how he considered multiple sexual encounters with a child "a mistake," Mr. Cornelius admitted that it was more aptly described as "bad judgment."

The victim, K.L., testified that she did not feel that the Defendant should be granted diversion. K.L. testified that she was once "very innocent and naive," but the Defendant's words and actions "deprived her of her innocence." She explained that the Defendant would say things that would give her sickening feelings, and she would have sleepless nights and nightmares. K.L. also explained that her very first encounter with the Defendant was forced; however, she admitted that the sexual contact continued over the next three months. K.L.

2

further explained that she began cutting herself to ease the emotional pain and stress. She also scrubbed her skin with hot water because she believed it would remove the filth of her life. K.L. explained that she could not trust anyone and that she "didn't deserve God's forgiveness." K.L. testified that her life had changed dramatically. She had to change schools because the Defendant's brother told people at school about the incident. As a result, K.L. became depressed and was placed on medication. Since she complained about the Defendant's sexual contact with her, she could no longer walk in her neighborhood or feel safe. K.L. testified that because of the actions of the Defendant and his family, her parents put their house up for sale. K.L. further testified that she "wanted to die and ruin [the Defendant's] life the way he ruined [her life]." She worried that the Defendant would "get away with this" and that granting him diversion would clean it off of his record, and "it might happen again."

The victim's mother, D.L.[2], also testified at the sentencing hearing. She explained that her family's life had changed dramatically since her next door neighbor, the Defendant, raped her daughter. She testified that the Defendant would do little things to annoy them when he saw them in their yard, like "rev" his engine, turn up his music, or quickly change gears in an effort to let the family know he was "mad about this [case]." D.L. explained that K.L. started to exhibit signs of trauma as early as April 2009, when the Defendant allegedly began sending her "very dirty, filthy talking, things she had never even heard of [on Facebook]." She further explained that K.L. "couldn't take it any longer," and on September 8, 2009, she told a counselor what happened. D.L. testified that K.L. now has a difficult time trusting people, especially men, and explained her change in behavior by saying "if it's a male friend [K.L. will] tell them right off, it doesn't matter who is there, she'll say, I don't like you in a way that you think that you're going to sexually do something to me." D.L. explained that it seemed as if K.L. thought every friend was a potential rapist. D.L. testified that while she does not hate the Defendant, she is very disappointed in his actions. D.L. testified that because the Defendant was a police cadet, his actions have harmed her opinion as to all police officers, and she is now afraid to allow her children to be in the front yard.

After the State rested its case, the Defendant's father, Frank Nauss, was granted permission to address the court. Mr. Nauss testified that the Defendant had always been an "outgoing, honest person." He explained that his son "feels bad" about the situation he had put himself and the victim in. Mr. Nauss also stated that during the past year, the Defendant had been "tore up" about how his mistake has "screwed up" both his and the other family's lives. Mr. Nauss also testified that he did not believe this mistake defined the Defendant." He explained that he was a firm believer in second chances and believed that, if given an honest chance, his son would strive daily to live a perfect life.

---

[2] In order to protect the privacy of the victim, this court refers to her mother by using her initials.

Before closing arguments, the Defendant submitted an allocution to the court where he stated, "I accept full responsibility for my actions." He explained that he had lost sleep over the hurt his actions had caused him, his family, and the victim. The Defendant also expressed a desire for both the victim and her family's forgiveness.

In denying judicial diversion, the trial court focused on "the circumstances of the offense" which it noted was the "most troubling aspect of this case." First, the trial court explained that often in statutory rape cases, the "victim . . . comes across as a much more mature person." However, the trial court observed that the victim "appears to be a child now[, a]nd was a year and a half younger when this [incident] happened." The trial court was also "troubled" by the repetitiveness of the Defendant's actions. The trial court concluded as follows:

> If this had only happened one time, and anguish and guilt had prevented any other actions, the Court would be much closer, in spite of the harm that's been done, to place him on diversion. But the fact that he did it three times with a young lady who was clearly a child, this Court feels that under these circumstances of the offense, diversion would . . . lessen or fail to sufficiently consider the seriousness of the actions. So, this Court does respectfully deny the motion for diversion.

The Defendant filed a timely notice of appeal.

ANALYSIS

The Defendant contends that the trial court abused its discretion in denying his application for judicial diversion. The Defendant argues that "in light of the factors weighing in favor of judicial diversion, [denying diversion] was an abuse of discretion." The State responds that the trial court properly considered the relevant factors and found that the circumstances of this case weighed against granting judicial diversion.

There is no dispute that the Defendant is eligible for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B). The decision to grant judicial diversion lies within the discretion of the trial court and will not be disturbed on appeal unless it is shown that the trial court abused its discretion. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). A denial of judicial diversion will not be overturned if the record contains any substantial evidence to support the trial court's action. Id. When making a determination regarding judicial diversion, the trial court must consider the following factors: (a) the defendant's

4

amenability to correction, (b) the circumstances of the offense, (c) the defendant's criminal record, (d) the defendant's social history, (e) the defendant's mental and physical health, and (f) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants. State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997); Parker, 932 S.W.2d at 958.

The decision should be based on whether the grant of diversion will serve the ends of justice for both the public and the defendant. Id. The record must reflect that the trial court considered and weighed all these factors in arriving at its decision. Id.; State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Additionally, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id. (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). However, "[t]he denial of judicial diversion may be based solely on the nature and circumstances of the offense, so long as all of the other relevant factors have been considered, and this factor outweighs all others that might favorably reflect on the [d]efendant's eligibility." State v. George William King, No. M2001-02026-CCA-R3-CD, 2002 WL 31520648, at *4 (Tenn. Crim. App. Nov. 13, 2002) (citing State v. Curry, 988 S.W.2d 153, 158 (Tenn. 1999)).

In the instant case, the trial court focused on the nature and circumstances of the offense and the deterrent effect in making its ultimate determination to deny diversion. In arriving at its decision, the trial court focused on the fact that the Defendant, a twenty-three year old police cadet, had multiple sexual encounters with a young girl who at all times appeared very child-like. The trial judge found the circumstances of the offense, that the Defendant used his position as a police cadet to facilitate an inappropriate relationship with the physically immature victim in this case, to be "the most troubling aspect of this case." The trial judge also found that the fact that the incidents occurred multiple times over a three month period weighed against diversion, as did the consequences that resulted for the victim. In sum, the trial judge concluded that given the Defendant's culpability in the offense and the effect it has had on the victim, granting the Defendant judicial diversion would not serve the ends of justice for the public, the victim, or the Defendant because it would "lessen or fail to sufficiently consider the seriousness of the [Defendant's] actions."

A thorough review of the record reveals that the trial court failed to make specific findings to illustrate that it considered and weighed all of the required factors in arriving at its decision to deny diversion. Specifically, the trial court failed to note its consideration of the following factors: (a) the Defendant's amenability to correction, (c) the Defendant's criminal record, (d) the Defendant's social history, and (e) the Defendant's mental and physical health. See Parker, 932 S.W.2d at 958. Although a denial of judicial diversion will

not be overturned if the record contains any substantial evidence to support the trial court's decision, the court's failure to address each factor and adequately explain its denial of judicial diversion on the record may require a remand to insure an adequate record for appellate review. See e.g., Lewis, 978 S.W.2d at 567 (concluding that remand was required because the trial court failed to make specific findings as to the defendant's amenability to correction and the deterrence value of denying judicial diversion, it stated minimal findings as to whether diversion would serve the ends of justice, and the record was inadequate for appropriate appellate review); State v. Albert Fitzgerald Turner, 2005 WL 1812287, No. W2004-01853-CCA-R3-CD at *4 (Tenn. Crim. App. Aug. 1, 2005) (holding that the trial court's failure to consider all the required factors on the record necessitated a remand for additional findings, especially where the record does not contain all the relevant information for this court to determine whether diversion is appropriate). Although the denial of diversion may be based solely on the nature and circumstances of the offense, the trial court is required to consider all six factors and state on the record why the nature and circumstances of the case outweigh the other factors to be considered. See George William King, 2002 WL 31520648, at *4 (quoting Curry, 988 S.W.2d 153,158). That did not occur in the instant case.

Despite the Defendant's argument that judicial diversion should have been granted in light of the factors weighing in favor of diversion, we feel constrained to note that all of the factors must be weighed and considered by the trial judge for this court to effect meaningful, appellate review.

Accordingly, this matter is remanded to the trial court for a comprehensive review of the Defendant's application for judicial diversion and for a full and complete consideration of all the factors it is required to consider in determining whether to grant or deny an application for judicial diversion. On remand, the trial court must specifically state on the record its analysis of all the required factors and the reasons supporting its decision.

The trial court's order is reversed and vacated, and this matter is remanded for further proceedings consistent with this opinion.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE

6