IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2016 Session

**STATE OF TENNESSEE v. WILLIE LEE HUGHES, JR.**

**Appeal from the Circuit Court for Williamson County**
**No. I-CR105947     Michael Binkley, Judge**
**No. I-CR126935  Joseph Woodruff, Judge**

———————————————————

**No. M2015-01688-CCA-R3-CD**
**No. M2015-01207-CCA-R3-CD – Filed November 29, 2016**

———————————————————

The defendant, Willie Lee Hughes, Jr., appeals both his Williamson County Circuit Court jury conviction of aggravated robbery and his guilty-pleaded conviction of failure to appear, claiming that the trial court erred by failing to exclude his statements to law enforcement officers on the basis that the statements were made during the course of plea negotiations and that the trial court erred by classifying him as a persistent offender. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. TIMOTHY L. EASTER, J., not participating.

Matthew J. Crigger, Brentwood, Tennessee, for the appellant, Willie Lee Hughes, Jr.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; Kim R. Helper, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In October 2011, the Williamson County Grand Jury charged the defendant with one count of aggravated robbery in case number I-CR105947. The defendant's case was scheduled for trial on October 10, 2012, but the defendant failed to appear. The defendant was later charged with failure to appear in case number I-CR126935, and he pleaded guilty to that charge with the sentence to be determined by the trial court at a hearing.

- 1 -

The defendant's aggravated robbery case proceeded to trial in May 2014. The State's proof at trial established that, at approximately 6:00 a.m. on August 18, 2011, Maria Jaimes was drinking coffee outside her place of employment, Brentwood Magic Cleaners, when a black male accosted her with a large knife. The assailant placed the knife against Ms. Jaimes's stomach and demanded that she "give [him] everything" before taking her iPod, cellular telephone, and handbag. The assailant then ran to a light-colored Chevrolet Blazer parked in front of a nearby hotel and fled the scene; a white shirt concealed the vehicle's license plate. Ms. Jaimes reported the robbery to her manager, who in turn called the police.

Brentwood Police Department ("BPD") Officer Stanley Boyd responded to the scene and spoke with Ms. Jaimes, who provided a description of the assailant and his vehicle. Upon learning that the assailant had stolen Ms. Jaimes's cellular telephone, Officer Boyd requested that the cellular carrier "ping" the telephone's location. The "ping" returned a location in north Nashville, and Officer Boyd advised officers with the Metropolitan Nashville Police Department ("Metro"), who responded to the location.

Metro Officers Kevin Cooley and Andrew Johnson arrived at the location at approximately 7:30 a.m., and about 30 minutes later, they observed a grey Blazer pull into the driveway of 1806 Elizabeth Road. The officers approached the driver of the vehicle, who identified herself as Lynne Edmonds. While the officers were speaking with Ms. Edmonds, the defendant walked out of the house and identified himself to the officers. The defendant admitted to Officer Cooley that he had been driving the Blazer earlier that morning. Ms. Edmonds gave officers consent to search the Blazer, and Officer Johnson discovered a large folding knife in the rear of the vehicle. At that point, Metro officers contacted BPD detectives and informed them that "we may have got your guy."

Shortly thereafter, BPD Detective James Colvin arrived at the scene and spoke with the defendant. After Detective Colvin provided the defendant with his *Miranda* warnings, the defendant stated that he had been at the Elizabeth Road residence "[a]ll morning" and adamantly denied any involvement in the robbery. Eventually, the defendant admitted that someone named "K.C." was driving the Blazer that morning, that K.C. had parked in front of the hotel, and that K.C. returned to the Blazer holding a woman's handbag. The defendant insisted that he had never gotten out of the Blazer.

Detective Colvin attempted to locate K.C. without any success, and in his subsequent interview with Ms. Jaimes, she stated that the defendant was the only person she saw in the Blazer.

On August 22, 2011, the defendant requested to speak with Detective Colvin at the Brentwood Police Department. Detective Colvin again administered

*Miranda* warnings to the defendant, and the defendant signed a waiver of his rights. Initially, the defendant maintained that the robbery had been K.C.'s idea and that he had remained in the Blazer while K.C. committed the robbery. Upon further questioning by Detective Colvin, the defendant eventually admitted, "It was me, me by myself." The defendant confessed that Ms. Jaimes's cellular telephone and iPod were at the Elizabeth Road residence. Although he was unable to find Ms. Jaimes's handbag, which the defendant stated he had thrown out of the Blazer following the robbery, Detective Colvin recovered the telephone and iPod from the Elizabeth Road residence and returned the items to Ms. Jaimes.

With this evidence, the State rested. Following a *Momon* colloquy, the defendant elected not to testify and chose not to present any proof. Based on the evidence presented, the jury convicted the defendant as charged of aggravated robbery.

Following a sentencing hearing, the trial court sentenced the defendant as a Range III, persistent offender to a term of 25 years' incarceration. A few months later, the trial court conducted a sentencing hearing on the defendant's failure to appear conviction. The court again sentenced the defendant as a Range III, persistent offender and imposed a sentence of four years' incarceration, to be served consecutively to the defendant's 25-year sentence.

Following the denial of the defendant's motion for new trial in the aggravated robbery case, the defendant filed a timely notice of appeal in both cases, which appeals were consolidated by this court. In this appeal, the defendant argues that the trial court erred by failing to exclude from his aggravated robbery trial his statements to Detective Colvin because they were made during the course of plea negotiations and that the sentences imposed in both cases were excessive.

*I. Defendant's Statements*

The defendant first contends that the trial court erred by failing to exclude from evidence during his aggravated robbery trial the statements he made to Detective Colvin, claiming that both statements were made during the course of plea negotiations and were therefore inadmissible under Tennessee Rule of Evidence 410. We disagree.

Tennessee Rule of Evidence 410 provides, in pertinent part, as follows:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:

. . . .

> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. . . .

Tenn. R. Evid. 410(4).

The seminal case in Tennessee regarding the exclusion of statements made during the course of plea negotiations is *State v. Hinton*, 42 S.W.3d 113 (Tenn. Crim. App. 2000), in which this court employed a two-prong test for determining whether a statement should be excluded under Rule 410. *Id.* at 121-123. First, the court must "consider the totality of the circumstances and determine whether the defendant exhibited an actual subjective expectation to negotiate a plea at the time of the discussion and whether the expectation was reasonable." *Id.* at 122 (citing *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978)). Second, the court must decide "whether the statement was made in the course of plea discussions 'with an attorney for the prosecuting authority,'" which includes a law enforcement officer acting "under the express authorization of the prosecuting attorney." *Hinton*, 42 S.W.3d at 122-23 (quoting Tenn. R. Evid. 410(4)). The state of the law is quite clear, however, that the protections of Rule 410 "do not encompass statements made during the preliminary investigation process." *Hinton*, 42 S.W.3d at 121 (citing *State v. James Wayne Butler*, No. 01C01-9301-CR-00023, slip op. at 6-7 (Tenn. Crim. App., Nashville, Sept. 9, 1993) (holding that statements made by defendant prior to being charged did not fall under the ambit of Rule 410)); *see also* Neil P. Cohen, et al., *Tennessee Law of Evidence* § 4.10[6][c] (6th ed. 2011) ("To be excluded, the statements or conduct must have been given as part of plea negotiations rather than during the preliminary investigatory process. For example, if a prosecutor participates in a custodial interrogation at a police station and the accused confesses during the questioning, Rule 410 would probably not bar the confession."); *State v. Calvin Person*, No. W2011-02682-CCA-R3-CD, slip op. at 19 (Tenn. Crim. App., Jackson, Oct. 31, 2013) (holding that Rule 410 did not apply to defendant's statement to law enforcement officer when it was given prior to indictment), *perm. app. denied* (Tenn. Mar. 5, 2014); *State v. Charles Vantilburg, III*, No. W2006-02475-CCA-R3-CD, slip op. at 7-8 (Tenn. Crim. App., Jackson, Feb. 12, 2008) (holding that defendant who entered into memorandum of understanding with law enforcement officers prior to his being charged with any crime did not afford him the protections offered by Rule 410), *perm. app. denied* (Tenn. Aug. 25, 2008).

In the instant case, the defendant's initial statements to Detective Colvin were made during the preliminary investigation, only hours after the commission of the armed robbery. Throughout that interview, the defendant maintained his innocence.

Although Detective Colvin made several statements about his ability to speak with the district attorney and make recommendations to assist the defendant, Detective Colvin also made it very clear that he was not making any guarantees or promises to the defendant. In the defendant's second interview with Detective Colvin, during which he eventually confessed to the robbery, the detective never mentioned the district attorney's office and instead informed the defendant that he had sufficient evidence to convict him. Significantly, the defendant was not charged with aggravated robbery until October 2011, nearly two months after his interviews with Detective Colvin. Without question, the defendant's statements to the detective were made during the initial investigatory process, well before charges were filed, and Rule 410 is simply inapplicable.

The defendant urges this court to extend the holding in *Hinton* to include *apparent* authority. In support of his position, he relies upon *United States v. Swidan*, 689 F.Supp. 726 (E.D. Mich. 1988), for the proposition that the inquiry under Rule 410 should be whether the officer made statements that could have led the defendant reasonably to believe that the officer had authority to enter plea negotiations. *Id.* at 728. Because we believe the analysis in *Hinton* to be a correct and complete statement of Tennessee law, we decline the defendant's invitation to extend it based upon *Swidan*, which was decided before *Hinton*.

## II. Sentencing

The defendant also contends that the trial court erred by classifying him as a Range III, persistent offender for sentencing purposes for both his aggravated robbery conviction and his conviction for failure to appear. Again, we disagree.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (stating that "although the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review"). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). The supreme court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (quoting T.C.A. § 40-35-210(e)). Under the holding in Bise, "[a] sentence should be upheld so long as it is within the

appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

In the instant case, the jury convicted the defendant of aggravated robbery, a Class B felony. The presentence investigation report established that the defendant had five prior Class C felony convictions, including two convictions for facilitation of aggravated robbery, and four prior misdemeanor convictions. Tennessee Code Annotated section 40-35-107 provides that a persistent offender includes a defendant "who has received . . . [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable." T.C.A. § 40-35-107(a)(1). In determining prior convictions, "convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction" unless those convictions include the statutory elements of "serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims." T.C.A. § 40-35-107(b)(4).

The defendant does not dispute that he has five prior Class C felony convictions; rather, he argues that his two prior convictions of facilitation of aggravated robbery, both of which occurred on October 5, 2005, did not include the elements of actual or threatened bodily injury or serious bodily injury and, thus, should count as a single conviction pursuant to the 24-hour merger rule.

This court has previously held that robbery, and by extension aggravated robbery, *see* T.C.A. § 39-13-402(a)(1)-(2) ("Aggravated robbery is robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon" or "[w]here the victim suffers serious bodily injury"), contains an element that the defendant cause or threaten to cause bodily injury. *See State v. Jamie Lynn Middlebrook*, No. M2009-02276-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Nashville, Jan. 11, 2011) (concluding "that the statutory elements of robbery include a threat of bodily injury when the State is required to prove that the defendant committed the act through violence or by putting the person in fear"), *perm. app. denied* (Tenn. May 26, 2011); *see also, e.g.*, *State v. Iwanda Anita Buchanan*, No. M2007-02870-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Nashville, Oct. 6, 2008) ("Both robbery and aggravated assault contain elements that the defendant cause or threaten to cause bodily injury."); *State v. Robert Lee Bailey, Jr.*, No. 01C01-9507-CR-00220 (Tenn. Crim. App., Nashville, May 9, 1996) (concluding that convictions of attempted aggravated robbery "threatened bodily injury to the victims" for purposes of the 24-hour merger rule).

That the facilitation statute itself does not contain an element of actual or threatened bodily injury or serious bodily injury matters not because the State "*must prove the commission of a specified felony*" in order to establish the facilitation of a

felony.  *State v. Parker*, 932 S.W.2d 945, 951 (Tenn. Crim. App. 1996) (emphasis added); *see* T.C.A. § 39-11-403(a) ("A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.").  Because aggravated robbery includes, at a minimum, an element of threatened bodily injury, facilitation of aggravated robbery necessarily includes such an element, and, as such, this element prevents the merger of the defendant's two prior facilitation of aggravated robbery convictions.  *Cf. State v. Michael Anthony Lewis*, No. M2005-02279-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Nashville, Sept. 26, 2006) (stating that "the merger rule should not apply" to convictions of facilitation of felony murder and attempted especially aggravated robbery), *perm. app. denied* (Tenn. Jan. 29, 2007).  Consequently, the trial court did not err by finding the defendant to be a persistent offender.  Moreover, because the trial court considered all relevant principles associated with sentencing, no error attends the imposition of these within-range sentences.

### *III. Conclusion*

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR.,  JUDGE