IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 7, 2019 Session

## STATE OF TENNESSEE v. WILLIAM BLAKE KOBECK

**Appeal from the Circuit Court for Fayette County**
**No. 18CR61  J. Weber McCraw, Judge**

_____

### No. W2018-02234-CCA-R3-CD
_____

The Appellant, William Blake Kobeck, pled guilty in the Fayette County Circuit Court to vehicular homicide by recklessness.  Pursuant to the plea agreement, he received a four-year sentence to be served on supervised probation with the trial court to determine his request for judicial diversion.  After a hearing, the trial court denied judicial diversion. On appeal, the Appellant contends that the trial court erred by denying his request for judicial diversion.  Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Thomas E. Hansom, Memphis, Tennessee, for the appellant, William Blake Kobeck.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Mark Edward Davidson, District Attorney General; and Falen Marie Chandler, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On November 29, 2018, the Appellant pled guilty to vehicular homicide by recklessness, a Class C felony.  At the guilty plea hearing, the State gave the following factual account of the crime:

Had this matter gone to trial, the State would have introduced proof through Trooper Anthony Johnson, Sergeant Maureen Velez, and other

troopers with the Tennessee Highway Patrol that on or about May 10, 2017, the Critical Incident Response Team with THP was requested to assist in the investigation of a single vehicle fatality crash that occurred on May 9, 2017, at approximately 11:31 p.m.

In that crash, the driver, the defendant, was driving a 2014 Cadillac CTS traveling north onto a road here in Fayette County when he failed to maintain control of his vehicle. At that time the vehicle crossed the centerline, continued across the southbound lane, entered a clockwise rotation, and exited the roadway. The vehicle traveled through the yard of a private residence located [on] Cherry Road and struck the driveway of that residence when he became airborne. The vehicle struck a standing tree and came to an uncontrolled final rest . . . where the victim, Reed Lowery, who was sitting in the front seat passenger side, was killed. During investigations it was determined that the speed limit on this road was forty (40) miles per hour. However, it was calculated that the defendant was doing anywhere between a hundred and twenty-six (126) and a hundred and thirty (130) miles per hour on this road during the time of the crash.

Defense counsel "[took] exception to the speed calculations" but otherwise agreed with the facts presented.

The trial court accepted the Appellant's guilty plea and sentenced him to the agreed sentence of four years to be served on supervised probation. The trial court immediately held a hearing to determine the Appellant's request for judicial diversion.

Sergeant Maureen Velez of the Critical Incident Response Team testified for the State that she was a crash reconstructionist and data recorder analyst and responded to the crash site in the early morning hours of May 10, 2017. The car had been removed from the scene, and investigators had placed paint markings on the road. Sergeant Velez saw car parts and damage to a home, the grass, and a tree. She later downloaded information from the car's airbag control module and determined that the car was traveling one hundred twenty-six to one hundred thirty miles per hour before the crash. The speed limit on Cherry Road was forty miles per hour.

On cross-examination, Sergeant Velez testified that the airbag control module recorded the car's speed five seconds before the crash and was based on tire rotation. She acknowledged that the car was "freewheeling" when it went airborne and that tire rotation while freewheeling could be much more rapid than when tires were in contact with the road. In this case, the car was traveling at a recorded speed of one hundred twenty-six miles per hour five seconds before the crash but was probably traveling

- 2 -

seventy-three miles per hour when it hit the tree.  A tire mark on the pavement showed that the car crossed the center line but that "there was no braking happening."

Sherry Sanders, the victim's mother, read a statement to the trial court.  In the statement, she described the victim as kind, loving, and caring and said he was "extremely close" to his older brother, who was "suffering immensely."  She stated that more than five hundred people attended the victim's funeral and that her family was experiencing "a tremendous amount of loss and heartache every single day."  The victim was working for Memphis Light, Gas, and Water in May 2017 but had been accepted into the lineman's program just before his death.  She said that although the victim knew the Appellant for a brief time, the victim would want the Appellant to have a productive and meaningful life.  Nevertheless, she requested that the trial court hold the Appellant accountable "for driving more than a hundred miles per hour on a two-lane, curvy country road that night two doors down from his own home that resulted in Reed's senseless death."  She said that she was not opposed to probation but that the conviction should remain on the Appellant's record.

The Appellant testified that the victim was his friend, that they had been to Hooters before the crash, and that the Appellant consumed "[n]ot even half a beer" at the restaurant.  He apologized to the victim's family and said that "I'd do anything to get him back."  The Appellant said that he knew the victim for one and one-half years and that the victim was "just the greatest human being" he ever met.  The Appellant stated that he had to live with the victim's death every day and that "there's not a day that goes by that I don't think about it."  He said that he had physical scars on his arm and head to remind him of the victim and that "it kills me knowing that he's gone."

The State introduced the Appellant's presentence report into evidence.  According to the report, the then twenty-four-year-old Appellant completed the tenth grade at Central Baptist School.  He then was home-schooled for two years but did not obtain his GED because he did not have all of the credits he needed.  In the report, the Appellant described his mental health as good but said that he had suffered from undiagnosed depression since he was sixteen years old.  The Appellant also described his physical health as good.  He said in the report that he first consumed beer or alcohol in 2014, that he typically consumed three or four beers every two to three weeks, and that he had not consumed alcohol in two weeks.  The Appellant said that he tried marijuana one time in 2011 but denied using any nonprescription or illegal drugs.  The report showed that the Appellant had been employed by Eagle Sales Company, a family-owned business, since 2009.  At the time of the report, he was the store manager and lived at home with his parents and three sisters.  The report showed that the Appellant had two prior traffic offenses but no other criminal history.

The State opposed the granting of judicial diversion, noting that the Appellant had two prior traffic citations for speeding and that "this isn't the first time that speeding has been an issue for the defendant." The trial court stated that the Appellant was eligible for judicial diversion, noting the certificate of eligibility issued by the Tennessee Bureau of Investigation (TBI). First, the court addressed the Appellant's amenability to correction. The court did not find anything in the testimony or in the presentence report that showed the Appellant was not amendable to correction. The trial court noted that the Appellant had two prior speeding tickets but that "part of driving is you get speeding tickets." Second, the trial court addressed the Appellant's criminal record. Although the Appellant had two previous speeding tickets, the trial court stated that it did not "typically regard" speeding tickets as part of a criminal record. Third, the trial court addressed the Appellant's social history and found that it was "good." That said, the trial court noted that the Appellant did not complete high school, that he "had the ability to do that," and that he "just has failed to do that."

The trial court next addressed the circumstances of the offense and stated as follows:

> Then I go back and look at the circumstances of the offense which involved speeding at a very, very high rate of speed. You know, I'm familiar with that road. Part of judges being local is you know the people, you know the environment. I know that road. It's just amazing to me to think that you can reach that kind of speed on that road. It is an extremely high rate of speed and I go back and look at the two speeding tickets. . . .

> So I'm concerned. You've been ticketed for speeding, yet you continue to speed. I understand that's part of driving sometimes but I don't understand the high, high speed in this matter. So that's of great concern to the Court.

Regarding the Appellant's physical and mental health, the trial court found no "issues." The trial court then addressed the deterrence value to the Appellant and others. The trial court stated that denying diversion would be of deterrence value to the Appellant and show others that "that type of high speed driving can't be tolerated, whether it caused a death or an accident or just so many people are put at risk by that type of driving." The trial court stated that the deterrence value to others was a "strong" consideration. Finally, the court considered whether judicial diversion will serve the interest of the public as well as the accused. The trial court recognized that the victim's family did not want any harm to come to the Appellant and that a felony conviction could be "harmful" to a defendant. Nevertheless, the trial court found that it had an obligation to deter others with speeding tickets from continuing to drive dangerously. In conclusion, the trial court stated that

while many of the factors weighed in favor of granting judicial diversion, "the Court must hang its hat on . . . the deterrent value to others and the public interest as well." Accordingly, the trial court denied the Appellant's request for judicial diversion.

## II. Analysis

On appeal, the Appellant contends that the trial court abused its discretion by denying his request for judicial diversion. The State argues that the trial court properly denied judicial diversion. We agree with the State.

As charged in this case, vehicular homicide is the "reckless killing of another by the operation of an automobile . . . as the proximate result of . . . [c]onduct creating a substantial risk of death or serious bodily injury to a person." Tenn. Code Ann. § 39-13-213(a)(1). Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(B)(i)(a)-(e), a defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; is not seeking deferral for an offense committed by an elected official; is not seeking deferral for a sexual offense; has not been convicted of a felony or a Class A misdemeanor previously and served a sentence of confinement; and has not been granted judicial diversion or pretrial diversion previously. Additionally, in determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the interest of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)).

The record must reflect that the trial court has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id. When reviewing a trial court's decision to grant or deny judicial diversion, the standard of review is abuse of discretion with a presumption of reasonableness. State v. King, 432 S.W.3d 316, 327 (Tenn. 2014). However, if the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. Id. at 328.

Initially, we note that the trial court took into consideration all of the Parker and Electroplating factors and explained its reasoning for denying judicial diversion.

Therefore, trial court's ruling is entitled to a presumption of reasonableness. The trial court's findings demonstrate that it denied the Appellant's request for judicial diversion based primarily on the deterrence value to others and based on whether judicial diversion will serve the interest of the public. The trial court also found that the circumstances of the offense and the deterrence value to the defendant did not favor diversion. The record contains sufficient evidence to support the trial court's findings. The court concluded that the factors against diversion outweighed the other factors considered by the court. Following our review, we conclude that the trial court did not abuse its discretion by denying the Appellant's request for judicial diversion.

## III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE