IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 21, 2021

**STATE OF TENNESSEE v. MARTIN HUBERT WHITE**

**Appeal from the Circuit Court for Giles County**
**No. 28CC1-2020-CR-15244      Christopher V. Sockwell, Judge**

_____

**No. M2021-00118-CCA-R3-CD**

_____

The Appellant, Martin Hubert White, pled guilty in the Giles County Circuit Court to aggravated assault, a Class C felony, and burglary of an automobile, a Class E felony, and received an effective three-year sentence suspended to time served and supervised probation. On appeal, the Appellant claims that the trial court erred by denying his request for judicial diversion. Based upon our de novo review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Brandon E. White (on appeal), Columbia, Tennessee, and Hershell D. Koger (at hearings), Pulaski, Tennessee, for the appellant, Martin Hubert White.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Rebecca S. Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In May 2020, the Giles County Grand Jury indicted the Appellant for the aggravated assault of Anthony Mitchell and the burglary of Mitchell's vehicle. On November 24, 2020, the Appellant pled guilty to the charges. At the guilty plea hearing, the State presented the following brief factual account of the crimes: "On or about [January 18, 2020], the victim in this case discovered that Mr. White had been burglarizing his vehicle. And upon that discovery, Mr. White did stab the victim in the [abdomen] with a knife[.]"

Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentences and the Appellant's application for judicial diversion.

The trial court held a sentencing hearing on January 26, 2021. During the hearing, the victim testified that about 5:00 a.m. on January 18, 2020, he went outside to start his vehicle so he could go to work. The victim saw a man "kneeling down" beside the vehicle. Initially, the victim thought he knew the man and that the man was playing a trick on him. The victim called out to the man, and the man stood up. The man was the Appellant, which surprised the victim. The victim asked the Appellant "who he was." The Appellant "looked very shaken and scared" and did not answer. The victim approached his vehicle, and the Appellant "took off running." The victim chased the Appellant, but the Appellant tripped and fell. When the victim got to the Appellant, the Appellant "slashed" at the victim, stabbing the victim's thigh. The victim realized the Appellant was holding a weapon but did not know the weapon was a knife.

The victim testified that the Appellant ran and that he chased the Appellant again. The Appellant fell at the bottom of a hill, and the victim caught up to him. The victim said that the Appellant stood up and "reared his hand back and let out the biggest grunt to try to force the knife inside [the victim's] midsection." The victim blocked the Appellant's hands, but the Appellant stabbed the victim near the victim's genitals. The victim checked to make sure the wound "wasn't really that bad" and continued chasing the Appellant. The Appellant jumped over a fence on the victim's property, and the victim "lost track of him." The victim went home and telephoned 911.

The victim testified that the Appellant appeared to have been inside the victim's vehicle because the glove box and center console were open. The victim said that the wound to his thigh was about one and one-half inches deep and about seven inches in length and that the second wound "went straight in." The victim was "rushed" to Giles County Medical Center, where he underwent an MRI and received stitches. He then was "rushed" to Vanderbilt Hospital and underwent a second MRI to check for internal bleeding. The victim returned to work three or four days later, but he did not recover for months and lost feeling in his leg. At the time of the sentencing hearing, he still experienced "a tingling sensation" from his knee to his hip. The victim received monetary compensation for his injuries.

The victim testified that he was opposed to the Appellant's receiving judicial diversion, explaining, "I would be okay with diversion if it wasn't for the second stabbing. He was intent on taking my life." The victim described the first stabbing as "a swipe" and said that the Appellant appeared to be defending himself. However, for the second stabbing, the Appellant was "lunging" at the victim and was trying to kill him. The State asked why the victim chased the Appellant, and the victim answered, "My family was in the house. I wasn't for sure what his intent was, what kind of weapon he had, any of that.

I just -- I turned into a protector at that moment. I just felt like if he got away from me and then I went to work, what was keeping him from coming back."

On cross-examination, the victim testified that it was still dark at the time of the incident and that his vehicle was parked in his carport. After the Appellant jumped over the fence, the Appellant fell off a cliff that was behind the victim's property. The victim fell fifty to sixty feet, and law enforcement found him lying at the bottom of the cliff. The victim acknowledged that he had warned the Appellant about the cliff.

Ti Rohasek of the Tennessee Department of Correction testified that he prepared the Appellant's presentence report. The Appellant was twenty-nine years old and gave a statement for the report. In the statement, the Appellant said that about 1:30 a.m. on January 18, 2020, he went to a bar with a friend and consumed "five or so beers and a few shots of whiskey." The Appellant left the bar about 3:00 a.m., drove home, and parked in his driveway. He continued drinking alcohol, "blacked out," and "woke up in Vanderbilt ICU." The Appellant learned he was a suspect in a stabbing. After he was discharged from the hospital, he met with Lieutenant Shane Hunter of the Giles County Sheriff's Department.[1] Lieutenant Hunter showed the Appellant evidence from the stabbings, and the Appellant acknowledged that he must have been the perpetrator. The Appellant maintained that he had no memory of the incident.

Rohasek testified that the Appellant reported three prior arrests for assault, burglary, and theft. The Appellant spent time in jail after each arrest, but none of the arrests resulted in a conviction. The Appellant attended high school but did not graduate. He obtained his GED in May 2009 and obtained an associate's degree from Copiah-Lincoln Community College in Wesson, Mississippi. In 2005, the Appellant was diagnosed with major depression disorder and completed a treatment program for depression in Jackson, Mississippi. He completed a treatment program for depression in Franklin, Tennessee, in 2019 and a treatment program for "depression, suicidal alcohol effects" at Middle Tennessee Mental Health in Nashville in May 2020. Rohasek said that the Appellant had been prescribed mental health medications and that the Appellant had been hospitalized for mental health issues six times.

Rohasek testified that the Appellant stated in the report that he began consuming beer or alcohol when he was twenty-one years old but that he was "drug or alcohol free" from November 1991 to August 2012. The Appellant reported that he had not consumed any alcohol since May 2020. The Appellant worked for Home Depot from May 2020 to June 2020, when he was arrested in this case, and for Boswell Regional Center from October 2014 to August 2016. The Appellant also worked for Valley Packaging and Love's. Rohasek spoke with the Appellant's mother, and she said the Appellant had

---

[1] Defense counsel advised the trial court that the Appellant spent "a period of months" in the hospital.

worked for her landscaping business "on and off" since 2014. On cross-examination, Rohasek acknowledged that he would not have known about the Appellant's arrests if the Appellant had not revealed them.

The State introduced the Appellant's presentence report into evidence. In addition to Rohasek's testimony, the report showed that the Appellant was single and did not have any children. In the report, the Appellant described his physical health as "good" and listed his mental health diagnoses as "MDD" and "ODD." The Appellant stated in the report that he began using drugs when he was twenty-one years old, that he last used marijuana in the fall of 2019, and that he had never tried to stop consuming alcohol or drugs. He also stated that his use of drugs and alcohol had caused "family conflict, employment problems, and violations of [the] law."

The presentence report did not show any prior convictions for the Appellant. His Strong-R assessment classified his overall risk level as "moderate" and concluded that he had moderate needs relevant to "Mental Health" and "Residential" and low needs relevant to "Friends," "Attitudes/Behaviors," "Aggression," "Alcohol/Drug Use," "Family," "Employment," and "Education."

The State advised the trial court that it was opposed to judicial diversion due to the seriousness of the aggravated assault and the victim's injuries. The State asserted that there was "a difference" between an aggravated assault committed with a weapon and involving injury and an aggravated assault in which a weapon was merely displayed. The trial court noted that the Appellant was a Range I, standard offender facing three to six years for the aggravated assault conviction, a Class C felony, and that no enhancement factors were applicable. See Tenn. Code Ann. §§ 40-35-112(a)(3), -114. The trial court stated that it thought the Appellant had been "forthright" in the presentence report but that the trial court was concerned about granting judicial diversion due to the Appellant's alcohol and mental health issues "for a number of years"; his failure to resolve those issues; and his putting himself in situations that could result in harm to people. The trial court said it also was concerned about granting judicial diversion because the aggravated assault of the victim resulted "in not just harm . . . but long-term harm and long-term damage."

At that point, the Appellant gave an allocution in which he apologized to the victim and the victim's family. The Appellant described the incident as a "horrible event" and asked that the victim forgive him for the physical harm he caused. The Appellant addressed his "issue with alcohol" and said he had been accepted into a six-month rehabilitation program with Safe Harbor and Lighthouse Ministries after his release from jail. He stated that the program would help him find employment and "staying alcohol free" and that he thought rehabilitation would be very beneficial for his future.

Defense counsel argued that the following mitigating factors were applicable: that "[s]ubstantial grounds exist tending to excuse or justify the defendant's criminal conduct,

- 4 -

though failing to establish a defense"; that "[t]he defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct"; and that the defendant had no prior criminal convictions, had earned an associate's degree, had maintained a steady work history, and was unlikely to reoffend if he received treatment for his alcoholism. Tenn. Crim. App. § 40-35-113(3), (11), (13). The State acknowledged that mitigating factors were applicable but asserted that the mitigating factors did not warrant judicial diversion.

The trial court considered whether the Appellant was a danger to the public. In doing so, the trial court noted that defendants convicted of driving under the influence were ineligible for judicial diversion, regardless of whether anyone was injured, and that the Appellant committed these offenses while under the influence. The trial court also noted that the Appellant drove home intoxicated and continued to drink alcohol "to a point of complete obliteration." The trial court stated that the Appellant had been consuming alcohol for eleven years and that his behavior had not changed during that time "except [now] we've had someone who was injured." The trial court questioned "why he brought a knife with him" and whether he "blacked out" as he claimed. At the conclusion of the hearing, the trial court stated as follows:

> Here is what I'm going to do. I don't see any way around it considering the nature of the crime, also the history of the defendant. He's had ongoing alcohol issues. They have not been resolved despite treatment, despite his history of it.
>
> I'm going to sentence him to a sentence of three years -- I think that's all I can sentence him to -- suspended to time served. I'm going to order him into alcohol rehab. I'll allow him to go to [Safe Harbor.][2]
>
> . . . .
>
> I think it just came -- [I] think it just comes down to that. It's either -- no matter how we do it, it's going to be three years and time served or he gets some form of diversion, and I just -- in this type of case, I just don't see it. I don't think it's appropriate.

## II. Analysis

The Appellant contends that the trial court erred by denying judicial diversion and requests that we review the trial court's decision de novo because the trial court failed to address the applicable Parker and Electroplating factors. The State argues that while the

---

[2] The judgments of conviction reflect a three-year sentence for aggravated assault and a concurrent one-year sentence for burglary of an automobile.

trial court did not specifically refer to every factor, the record reflects that the court considered all of the required factors; therefore, we should review the trial court's denial of judicial diversion for an abuse of discretion. The State also argues that the trial court properly denied judicial diversion. Upon de novo review, we conclude that the trial court properly denied judicial diversion.

As charged in this case, aggravated assault occurs when a person intentionally or knowingly commits an assault and the assault involves the use of a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). Relevant to this case, assault occurs when a person intentionally or knowingly causes bodily injury to another. Tenn. Code Ann. § 39-13-101(a)(1). "Bodily injury" is defined as "including a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). A person commits burglary "who, without the effective consent of the property owner . . . [e]nters any . . . automobile . . . with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(1)(4) (2020).[3]

Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(B)(i)(a)-(e), a defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; is not seeking deferral for an offense committed by an elected official; is not seeking deferral for a sexual offense; has not been convicted of a felony or a Class A misdemeanor previously and served a sentence of confinement; and has not been granted judicial diversion or pretrial diversion previously. Additionally, in determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the interest of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)).

The record must reflect that the trial court has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id. When reviewing a trial court's decision to grant or deny judicial diversion, the standard of review is abuse of discretion with a presumption of reasonableness. State v. King, 432 S.W.3d 316, 327 (Tenn. 2014). However, if the trial

---

[3] Effective July 1, 2021, burglary is codified at Tennessee Code Annotated section 40-35-1002.

court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. Id. at 328.

Turning to the instant case, we do not think the record sufficiently reflects that the trial court considered all of the applicable factors. The trial court never mentioned "Parker" or "Electroplating" and did not refer to the seven factors that the court was required to consider. While the trial court's comments demonstrate that it thought the Appellant's amenability to correction, the circumstances of the offense, the Appellant's social history, and the status of the Appellant's physical and mental health weighed against granting judicial diversion, the trial court did not address the Appellant's lack of a criminal record, certain social factors that were worthy of consideration such as the Appellant's obtaining an associate's degree and history of employment, the deterrence value to the Appellant and others, or whether judicial diversion will serve the interest of the public as well as the Appellant. Therefore, we will review the trial court's denial of judicial diversion de novo.

The parties do not dispute that the Appellant qualifies as a candidate for judicial diversion. Therefore, we turn to the Parker and Electroplating factors. First, the Appellant, a relatively young man, has been consuming excessive amounts of alcohol for a number of years. By his own accord, his addiction to alcohol has resulted in family conflicts, employment problems, and violations of the law, yet he has never sought treatment. Therefore, we think his amenability to correction does not weigh in favor of granting judicial diversion. Second, the circumstances of the offenses are troubling. The Appellant drove home highly intoxicated and continued to drink alcohol. Although he claimed that he consumed so much alcohol that he "blacked out," he then managed to burglarize the victim's car, flee from the victim, stab the victim twice, and jump over a fence. The Appellant tried to inflict serious injuries to the victim. Thus, we think the circumstances of the offense strongly weigh against granting judicial diversion. Third, the Appellant does not have any prior convictions, which weighs in favor of granting diversion. Fourth, the Appellant dropped out of high school but earned his GED and even earned an associate's degree in 2014. He has been employed since 2014, but he also has been addicted to alcohol and has used marijuana. Accordingly, we think that the Appellant's social history weighs slightly in favor of judicial diversion.

As to the Appellant's physical and mental health, the Appellant described his physical health as good. He suffers from depression, though, and has been "hospitalized" for mental health issues six times, yet he continues to abuse alcohol and drugs and stated in his presentence report that he has never tried to stop consuming alcohol. Therefore, while the Appellant's physical health may weigh in favor of granting judicial diversion, his mental health does not. In considering the deterrence value to the defendant and others, we note that the trial court questioned why the Appellant brought a knife with him to burglarize the victim's car and questioned whether the Appellant "blacked out" as he claimed. We agree with the trial court and conclude that granting judicial diversion would not provide deterrence value to the Appellant or to others. Regarding the final factor, the

victim testified that the Appellant tried to kill him, and the victim was still experiencing a physical effect of the stabbings at the time of the sentencing hearing.  Thus, we do not think that diversion will serve the ends of justice.  In sum, almost all of the factors weigh against granting judicial diversion, and the circumstances of the offense in particular weigh heavily against diversion.  We conclude that the trial court properly denied judicial diversion.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE