IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 28, 2023 at Knoxville

## STATE OF TENNESSEE v. DAVID ELIAS HERNANDEZ SANCHEZ

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2021-CR-1198    Robert Bateman, Judge**

_____

### No. M2023-00180-CCA-R3-CD

_____

The defendant, David Elias Hernandez Sanchez, appeals the Montgomery County Circuit Court's denial of his bid for judicial diversion of the four-year sentence imposed for his guilty-pleaded conviction of aggravated assault. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and KYLE A. HIXSON, JJ., joined.

Chase T. Smith, Clarksville, Tennessee, for the appellant, David Elias Hernandez Sanchez.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Robert J. Nash, District Attorney General; and Crystal Morgan, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Montgomery County Grand Jury charged the defendant with one count of aggravated assault of the victim, Janiah Terry. On September 23, 2022, the defendant entered an open plea to the charged offense with the trial court to determine the length and manner of service of the sentence and whether the defendant should be granted judicial diversion. At the plea submission hearing, the State provided the following summary of facts:

> On February 19, 2021, officers responded to 101 University Avenue, Clarksville, Montgomery County, Tennessee, where the victim reported that the defendant had slammed her head into the floor, bit her on her right shoulder blade, dr[agged] her by her hair across the room, and stuffed a headband into her

mouth while he continued to try to choke her with other objects. The victim did have physical signs of assault and was required to seek medical treatment.

At the January 2023 sentencing hearing, the victim testified that she and the defendant met on Tinder and began a relationship in October 2020. She said that on February 19, 2021, the defendant came to her home and while there became angry about something that he saw on her cell phone. The victim went into the bathroom, and the defendant followed her and threw her telephone "at my right arm." He threatened to "slap me in my face" and then "grabbed me and choked me with both hands, and I fell into the shower with him on top of me." The victim got up and sat on the toilet, and the defendant "slapped me on the left side of my face." He then "grabbed me by my hair and pulled me onto the floor," stuffed her headband into her mouth, and covered her head with a towel. When the victim screamed, the defendant "covered my mouth, and grabbed me by my hair, and pulled me out of the bathroom." In the bedroom, the defendant "threw" the victim "onto the floor," "took me by my hair," and "banged my head on the carpet." The defendant then took a plastic shopping bag and "[t]ried to put it over my head." The victim's sister came to the room, and the victim yelled for her to "[c]all the cops." The defendant again followed the victim into the bathroom where he continued "choking me with both hands." When the defendant tried to pull the victim "back into the bathroom" with his "arms wrapped around" her, he "bit me on my right shoulder." The victim said that she sustained injuries from the attack, including nerve pain, losing her voice, and "red and swollen" scratches and that since the attack, she suffers from "post-traumatic stress disorder, anxiety, and depression."

The defendant testified and acknowledged that he hurt the victim. He said that the victim "would break up with me and then she would get back with me" and that he lost his temper the night that he attacked her. The defendant said that at the time of the hearing, he was living in New Mexico with his pregnant fiancé and helping care for his mother who was undergoing cancer treatment. He said that he worked for a clay distribution company and that he was trying to get into college.

At the close of the evidence, the defendant asked the trial court to place him on judicial diversion, citing his youth at the time of the offense, his accepting responsibility, and his lack of a criminal history. The State argued that although the defendant qualified for judicial diversion, it was not appropriate in this case because of the nature and circumstances of the offense. The trial court denied the defendant judicial diversion and sentenced the defendant as a Range I offender to four-years of supervised probation, taking into account

the evidence presented at th[e] sentencing hearing, including the testimony of Ms. Terry; the pre-sentence report; the arguments of counsel; the nature and characteristics of the criminal conduct; and the evidence and information offered by the parties; statistical information . . . ; the testimony of the [d]efendant; and the risk and needs assessment.

The trial court found that the defendant's amenability to correction, lack of criminal history, social history, and physical and mental health weighed in favor of a grant of diversion but that the circumstances of the offense and the "special and general deterrence value weigh against granting a judicial diversion in this case." The court emphasized that "this assault occurred over a[n] extended period of time, involved strangulation, biting, and other attacks." Although the trial court did not explicitly find that the circumstances of the offense and the deterrence value outweighed the other factors, the court's findings and conclusion indicate that the court gave greater weight to those two factors.

In this appeal, the defendant contends that the trial court abused its discretion by denying him judicial diversion, arguing that the trial court inappropriately weighed the circumstances of the offense over numerous factors favoring the grant of diversion. The State argues that the trial court did not err.

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id*. To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, the offense for which deferral is sought; the offense must not be one that is excluded from deferral pursuant to Code section 40-35-313(a)(1)(B)(ii)(b) and (c); the defendant must not have previously been convicted of a felony or a Class A misdemeanor for which a sentence of confinement is served; and the defendant must not have previously been granted judicial diversion or pretrial diversion. *Id*. § 40-35-313(a)(1)(B)(i). Diversion requires the consent of the qualified defendant. *Id*. § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider

(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and

-3-

mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice--the interests of the public as well as the accused.

*Id*. (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id*. (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)). The trial court need not provide a recitation of all the applicable "factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *King*, 432 S.W.3d at 327.

Although judicial diversion is not a sentence, our supreme court has determined that the standard of review first expressed in *State v. Bise*, applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion." *King*, 432 S.W.3d at 325; *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (holding that the standard of review of the trial court's sentencing determinations is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act"). Importantly, the supreme court emphasized that the adoption of the *Bise* standard of review "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326. Thus, when the trial court considers each of the factors enumerated in *Parker* and weighs them against each other, placing its findings in the record, as required by *Electroplating*, we "apply a presumption of reasonableness," per *Bise*, and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *King*, 432 S.W.3d at 327. When "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." *Id*. Instead, "the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration. The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." *Id*. at 328.

Here, the trial court properly weighed each of the required factors and concluded that the circumstances of the offense and the deterrence value outweighed the other factors. Because the trial court weighed the relevant factors on the record, our standard of review is abuse of discretion. *King*, 432 S.W.3d at 326. Although the

defendant qualified for judicial diversion, the circumstances of the offense alone can support denial of diversion.  The facts, conceded as true by the defendant at the plea submission hearing, established that the defendant beat, bit, dragged by the hair, strangled, and gagged the victim, causing her physical injury.  The victim's testimony established that the assault continued even after the victim tried to get away.  This evidence supports the trial court's decision, and the trial court did not abuse its discretion by denying the defendant's request for judicial diversion.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE